OPINION
Rashaid Mosley appeals from his conviction and sentence for aggravated robbery and kidnaping.
The evidence presented by the State at trial demonstrates that Rashaid Mosley, Raymond Lewis, LeShawn Perry and Kevin Hughes met prior to March 1, 1999 to plan a robbery. The location they planned to rob was the Westside Supermarket at Germantown and McArthur Streets in Dayton. The four men decided to rob that store on March 1 because people who had received social security checks would likely cash them at the store that day. The planned robbery called for the use of two loaded shotguns and a BB gun that resembled an actual handgun. Mosley was to count the time that the robbery consumed.
On March 1, 1999, the four men entered the alley behind the store and waited for the store's customers to leave. Shortly after 1:00 p.m., the men entered the store. Each wore a ski mask.
Lewis was the first man to enter the store. He was wearing a brown, hip-level construction worker's coat and a Charlotte Hornets hat, and was carrying a shotgun. The second man to enter the store was Defendant, Rashaid Mosley. He was wearing dark pants and a black coat, and carried a shotgun. The third man to enter the store was LeShawn Perry. Perry had on a black vest and black jeans and carried the BB gun. The final man to enter was Kevin Hughes. He wore a red sweatshirt.
Hasan Saleh, the owner of the store, was helping a customer with lottery tickets when Lewis approached him holding a shotgun. Lewis ordered Saleh at gunpoint to walk to the front door and lock it. When Lewis gave the order, Saleh recognized his voice as that of a person who frequented the store. Two nights earlier, Saleh had a conversation with Lewis and Perry when they came into the store at closing time. Saleh testified that he recognized Lewis and Perry on that occasion because they sometimes came into the store four or five times every day.
When Saleh locked the front door, Defendant Mosley pointed his shotgun at him. Lewis and Mosley forced Saleh to kneel down on the floor by the cash register. Lewis went to the office where most of the cash was kept while Mosley began timing the robbery and shouting out the time that expired.
Richard Overman, a repairman who was working on one of store's ice cream freezers, had just returned from lunch and entered the store via the back door. He observed Saleh with a shotgun held against his head. Overman used his cell phone to call 911 to report a robbery in progress at the store.
While kneeling on the floor, Saleh saw Hughes take money out of the cash register. Perry was walking back and forth, holding a small pistol. Saleh described Perry and Hughes as heavier-set than Lewis and Mosley. Saleh recognized Perry as a man who frequently came into the store with Lewis.
Eddie Safford, a store employee, was working in the back of the store when he heard a loud voice say, "give me your money." Safford came to the front of the store to see what was happening, whereupon Perry pointed the BB gun at Safford's head and said, "move and I'll blow your brains out." According to Safford, the BB gun looked just like a .357 magnum. Safford was forced to lie down on the floor at the front of the store. Safford could hear one voice counting out the time.
Ella Simpson was working her cash register when the robbers entered the store carrying shotguns and a handgun. They ordered Simpson to get down on the floor, which she did after she opened the cash register. Simpson described the two men carrying the shotguns, Lewis and Mosley, as tall and slim, and she described the man carrying the handgun whom she recognized as a frequent customer of the store, Perry, as chubby and short. While on the floor Simpson could hear one of the men counting out time.
The perpetrators removed cash from both the cash register and the office. They then ordered Saleh to unlock the front door, and fled North through the parking lot. Richard Overman, who was in the back of the store talking on his cell phone with police, told the police dispatcher that the robbers were traveling North. Moments later, Officer Dix of the Dayton Police Department arrived on the scene. After talking to the store's employees, Officer Dix immediately broadcast a description of the four suspects over his police radio.
Dayton police officers Robinson and Pendley were on routine patrol when they heard Officer Dix's broadcast. As they approached an area a block or two north of the Westside Supermarket they observed one person wearing black running North on McArthur and another short, heavy-set man, later identified as Kevin Hughes, walking North. The man was wearing a red coat. By the time Robinson and Pendley stopped Hughes he had already removed his red coat, which police later found nearby.
The police officers immediately noticed a pile of cash on the ground right by Hughes. Hughes was perspiring so heavily that in the thirty degree outside air, steam was rising off of his body. Hughes was taken into custody. Because he was a juvenile, his mother was contacted and she came to the scene. After Hughes spoke with his mother it became apparent to police that he was involved in the robbery they were investigating. Hughes was arrested for aggravated robbery and was transported to the police station for further questioning. When he was later questioned by Det. Ritchie, Hughes identified the other persons involved in the robbery of the store, including Defendant Mosley.
Meanwhile, Lewis, Perry and Mosley had met at Lewis' house and split up the money they took from the store. Each man received about one thousand dollars. The three men then went to Mosley's residence on Dorham Place, where Mosley lived with his girlfriend, LaNina Jackson. At around 6:30 p.m., Dayton police officers knocked on the front door, but they received no response for several minutes. Finally, LaNina Jackson opened the door. The police officers announced their purpose to Jackson, and subsequently took Lewis, Perry and Mosley into custody. Jackson gave the officers permission to search her apartment. Police discovered $312 in cash plus some food stamps inside a washing machine and another $988 in cash in a dresser drawer in Jackson's bedroom. Jackson disclaimed any knowledge of or interest in the money police discovered.
As a result of these events, Rashaid Mosley was indicted on one count of Aggravated Robbery, R.C. 2911.01(A)(1), and three counts of Kidnaping, R.C. 2905.01(A)(2). All of the charges carried a firearm specification. Mosley was subsequently tried before a jury. For his defense Mosley claimed alibi. The jury subsequently found Mosley guilty of all charges and specifications. The trial court sentenced Mosley to a total of twelve years imprisonment.
Rashaid Mosley has timely appealed to this court from his conviction and sentence, assigning error which concerns the weight and sufficiency of the evidence.
 FIRST ASSIGNMENT OF ERROR THE JURY'S VERDICT FINDING DEFENDANT-APPELLANT GUILTY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172,175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
The evidence presented at trial in this case was conflicting. The evidence that the State presented is set out above. According to Mosley, at the time of this robbery he was either at a barbecue in the park at Edgewood Courts or in and out of a friend's apartment at Edgewood Courts during the afternoon.
Mosley argues that the State failed to prove that he was one of the perpetrators of this robbery. In support of that claim, Mosley points out that none of the employees of the store that was robbed had positively identified him. Moreover, when police arrested Mosley and searched his girlfriend's apartment where Mosley was staying, they did not find any guns or the more than four thousand dollars in cash that was taken in the robbery. According to Mosley, the only evidence which identifies him as one of the perpetrators of this robbery was the testimony by Kevin Hughes and LeShawn Perry, two of the participants in this robbery, who subsequently pled guilty. Mosley argues that the testimony by Hughes and Perry is not worthy of belief because they testified against him in order to obtain more favorable treatment in their own cases as part of their plea bargain agreements with the State.
While the testimony by Perry and Hughes may be the only direct evidence at trial identifying Mosley as one of the perpetrators of this robbery, other evidence presented at trial corroborated the testimony that Hughes and Perry gave. That included the account the store employees gave of the number of persons involved in this robbery, the number and types of weapons that they used, and the general physical characteristics and clothing worn by the perpetrators. The owner of the store, Hasan Saleh, recognized one of the perpetrators, Lewis, by his voice during the robbery because Lewis was a frequent customer. Saleh also recognized Perry as a man who frequently came into the store with Lewis. Ella Simpson, the store's cashier, also recognized Perry as a frequent customer of the store. When police arrested Mosley at his girlfriend's apartment a few hours after the robbery occurred, their search of the apartment yielded one thousand three hundred dollars in cash, which Mosley's girlfriend said did not belong to her.
Moreover, the testimony given by Mosley's alibi witnesses was inconsistent and conflicting. Bobby Groce, Jr., testified that he and Mosley were at the park all day having a barbecue and that it was hot outside. All of the other witnesses at trial testified that the temperature was only about thirty degrees that day. Despite Groce's testimony that he and Mosley had a barbecue, Groce also testified that he and Mosley left the park around 12:00 — 1:00 p.m. to go to Rally's where they ate hamburgers. Lucas Waters testified that he, Groce and Mosley were in the park and in and out of a friend's apartment all day. Waters denied, however, that they ever went anywhere to get something to eat.
In weighing the conflicting evidence in this case, it was the task of the jury, as the trier of facts, to decide which witnesses to believe and what weight to give to their respective testimonies. State v. DeHass (1967), 10 Ohio St.2d 230; State v.Thompkins (1997), 78 Ohio St.3d 380; State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, unreported. In reviewing the entire record in this case, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in finding the State's version of these events to be more credible than Defendant Mosley's version, or that a manifest miscarriage of justice has occurred. Therefore, we cannot find that Mosley's conviction is against the manifest weight of the evidence.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT IMPROPERLY DENIED DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29.
When considering a defendant's Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence offered by the State proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion may be granted if reasonable minds could only conclude that the evidence fails to prove all of the elements of the crime.State v. Miley (1996), 114 Ohio App.3d 738.
 "Sufficiency" of the evidence refers to its logical capacity to demonstrate both the criminal conduct and the culpable mental state that the alleged criminal liability requires. The test is whether all or some part of the evidence that was admitted in the trial would, if believed, convince the average mind beyond a reasonable doubt that the defendant is guilty of committing the offense charged. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 State v. Bradley (Oct. 2, 1997), Champaign App. No. 97-CA-03, unreported, at 7.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Mosley was found guilty of violating R.C. 2911.01(A)(1) and R.C. 2905.01(A)(2) which provide respectively:
2911.01 Aggravated robbery
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
 2905.01 Kidnapping
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
* * *
 (2) To facilitate the commission of any felony or flight thereafter.
As he did in preceding assignment of error, Mosley argues that because the evidence presented at trial fails to positively identify him as one of the perpetrators of the robbery, that evidence is not sufficient to sustain his convictions. We do not agree.
If accepted as true by the trier of facts, the evidence that the State presented, including the testimony of the store employees and the testimony of two of the participants in the robbery, Hughes and Perry, who described Mosley's involvement in this crime, is clearly sufficient to convince the average mind of Mosley's guilt beyond a reasonable doubt. As for Mosley's claim that Hughes and Perry should not be believed, it was up to the jury sitting as the trier of facts to determine the credibility of the witnesses and the weight to be given to their conflicting testimony. State v. DeHass, supra. We will not disturb those determinations in this case. Bradley, supra.
At a minimum, viewing the evidence presented in this case in a light most favorable to the State, as we must, we conclude that reasonable minds could reach different conclusions as to whether the evidence proves each and every element of the charged offenses beyond a reasonable doubt. Thus, the trial court properly overruled Mosley's Crim.R. 29 motions for acquittal. State v.Bridgeman, supra.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
 _____________________________ GRADY, Presiding Judge
WOLFF, J. and YOUNG, J., concur.