**The STATE of Ohio, Appellee,**

v.

**MILEY, Appellant.**

[Cite as *State v. Miley* (1996), 114 Ohio App.3d 738.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2168.

Decided Sept. 30, 1996.

*Michael Ater,* Ross County Assistant Prosecuting Attorney, for appellee.

*Edward J. Brown,* for appellant.

*Per Curiam.*

Todd Miley appeals from his conviction for felony child endangerment. Miley claims that the Ross County Court of Common Pleas erred when it denied his Crim.R. 29(A) motion for acquittal at the close of the state's case. We agree and reverse the judgment of the trial court. Reasonable minds could only reach the conclusion that the state failed to demonstrate that Miley recklessly violated a duty of protection, care, or support which created a substantial risk to the health or safety of his child.

I

Tammy Detty gave birth to Jessica Miley on January 18, 1994. Miley was the father of Jessica. Miley and Detty lived together along with Jessica and Detty's three other children. Six days after her birth, Jessica had difficulty breathing and was hospitalized for apnea and gastroesophageal reflux. Miley and Detty took Jessica home after they received appropriate training and medication for Jessica. On February 19, Jessica was again admitted to Children's Hospital in

Columbus. Doctors initially placed Jessica in the infectious disease ward. There were no bruises or lacerations on Jessica. Jessica remained in the infectious disease ward for two to three days until further investigation by her doctors revealed serious internal injuries. Doctors discovered that Jessica's skull, right and left tibias, right femur, left humerus, ribs five and seven, pelvis, and distal right radius were all fractured. Jessica also suffered from subdural effusions, retinal hemorrhaging, and interhemispheric blood. The doctors were unable to determine exactly when Jessica suffered these injuries.

The grand jury indicted Miley for child endangerment that resulted in serious physical harm to the child in violation of R.C. 2919.22(A). The indictment also contained a specification that Miley caused physical harm to Jessica during the commission of the offense. The state's case consisted of testimony at trial from four doctors and a police detective as well as medical exhibits. The doctors uniformly agreed that Jessica suffered her injuries from intentional trauma: blows to the head, shaking, twisting, and pulling. The doctors rejected brittle-bone disease as an explanation for Jessica's injuries. The doctors opined that Jessica had been injured by child abuse.

Detective Hayburn testified that Detty told him that Miley and she were the only ones who had access to and cared for Jessica. Detective Hayburn further testified that Miley and Detty thought Jessica's injuries might have resulted from an incident involving Detty's eighteen-month-old son, Robert. Robert apparently got out of his crib and knocked the car seat Jessica was sleeping in off a bed. Detty had said that Jessica showed no marks from the fall. The doctors testified that they considered and rejected the car seat incident as an explanation for the injuries. The state then rested.

Miley put on a defense which is not relevant to the resolution to this appeal. Miley did not renew his motion for acquittal before the case was submitted to the jury. The jury found that Miley was guilty of child endangerment that resulted in serious physical harm to Jessica. The jury returned a not guilty verdict on the specification that Miley caused injury to Jessica. Miley then filed a Crim.R. 29(C) motion for acquittal which the trial court denied. The trial court sentenced Miley to prison for eighteen months. Miley now appeals and asserts six assignments of error: (1) the judgment was against the manifest weight of the evidence, (2) the judgement was not supported by sufficient evidence, (3) the motion for acquittal should have been granted at the close of the state's case, (4) the motion for acquittal should have been granted after the jury verdict, (5) the jury instructions on serious physical harm were prejudicial, and (6) the sentencing was illegal.

## II

■■■ We first address Miley's motion for acquittal made at the close of the state's case. A defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence. *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 163, 14 O.O.3d 403, 403–404, 398 N.E.2d 781, 782; *State v. Wright* (Feb. 28, 1996), Washington App. No. 95CA3, unreported, 1996 WL 87459. See *Helmick v. Republic–Franklin Ins. Co.* (1988), 39 Ohio St.3d 71, 529 N.E.2d 464, paragraph one of the syllabus. If the motion is properly renewed, an appellate court reviewing the original motion examines only the portion of the record toward which the original motion was directed. *Helmick v. Republic–Franklin Ins. Co.*, 39 Ohio St.3d at 73, 529 N.E.2d at 466–467.

■■■ A motion for acquittal is generally renewed at trial, but Miley did not renew his motion for acquittal until after the jury returned its verdict. However, Crim.R. 29(C) provides that "a motion for judgment of acquittal may be made or renewed within fourteen days after the jury is discharged * * *. If a verdict of guilty is returned, the court may on such motion set aside the verdict and enter judgment of acquittal." The trial court applies the same standard in ruling on motions for acquittal presented either at trial or those made after judgment pursuant to Crim.R. 29(C). *State v. Misch* (1995), 101 Ohio App.3d 640, 650, 656 N.E.2d 381, 387–388; *State v. Beehive Ltd. Partnership* (1993), 89 Ohio App.3d 718, 723, 627 N.E.2d 592, 596. We therefore find that Miley has preserved the issue for appeal because we find no basis for distinguishing between the methods that Crim.R. 29 permits for renewing a motion for acquittal; both methods provide the trial court with an opportunity to take the case from the jury after all the evidence was presented. See *State v. Johnson* (Jan. 8, 1992), Wayne App. No. 2659, unreported, 1992 WL 2922.

■■■ A motion for acquittal at the close of the state's case tests the sufficiency of the evidence. Pursuant to Crim.R. 29(A), a trial court must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, 401–402, 381 N.E.2d 184, 185. An appellate court undertakes a *de novo* review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt. *State v. White* (1989), 65 Ohio App.3d 564, 568, 584 N.E.2d 1255, 1258. See, also, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

The state charged Miley with a violation of R.C. 2919.22(A). R.C. 2919.22(A) is concerned with neglect, which is generally characterized by acts of omission. *State v. Kamel* (1984), 12 Ohio St.3d 306, 308, 12 OBR 378, 380–381, 466 N.E.2d 860, 862–863. R.C. 2919.19(A) is not, however, a strict liability offense; the culpable mental state required is that of recklessness.[1] *State v. Williams* (1984), 21 Ohio App.3d 12, 13, 21 OBR 13, 13–14, 486 N.E.2d 113, 114–115; *State v. Newman* (Aug. 18, 1995), Ross App. No. 94CA2079, unreported, 1995 WL 499771. See *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, paragraph one of the syllabus. The prosecution was required to prove that Miley (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of the subject child; that he (2) recklessly (3) violated a duty of protection, care, or support imposed by law which created a substantial risk to the health or safety of the child; and (4) that Miley's conduct resulted in a serious physical harm to the child. R.C. 2919.22(A); *State v. Newman, supra.* The fourth element—that the defendant's conduct resulted in a serious physical harm to the child—elevates the offense from a misdemeanor to a felony. R.C. 2919.22(D). Miley was also charged with a specification that would have permitted an indefinite sentence. R.C. 2941.143.

We focus on the second and third elements, which involve the *mens rea* and *actus reus*—the culpable mental state and the outlawed act—of a violation of R.C. 2919.22(A). Recklessness is the culpable mental state necessary for a violation of R.C. 2919.22(A). R.C. 2901.22(C) provides:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

The guilty act necessary for a violation of R.C. 2919.22(A) is that the actor violate a duty of care, protection, or support, thus creating a substantial risk to the health or safety of the child. A parent clearly has a duty imposed by law to protect his or her child from abuse and to care for the child's injuries. See *State v. Sammons* (1979), 58 Ohio St.2d 460, 463, 12 O.O.3d 384, 385–386, 391 N.E.2d 713, 715. A "substantial risk" is "a strong possibility, as contrasted with a remote * * * possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(H).

---

1. The culpable mental state for a violation of R.C. 2919.22(A) has been certified to the Ohio Supreme Court. *State v. McGee* (1996), 75 Ohio St.3d 1424, 662 N.E.2d 26.

■ The state's theory of the crime is apparently that Miley either abused Jessica or recklessly violated a duty to protect her from abuse. The state presented no direct evidence that Miley abused Jessica, failed to protect her from abuse, or even knew of the abuse. The state relies upon circumstantial evidence to make its case. Circumstantial evidence inherently possesses the same value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus. However the state's circumstantial evidence is insufficient to support its theory.

■ The state argues that Jessica was abused by someone and that Miley, since he cared for her at all times, either committed the abuse or failed to prevent the abuse. In support of this theory, Detective Hayburn testified that Detty told him that she and Miley were the only ones who cared for Jessica. However, the state presented no evidence that Miley was with Jessica twenty-four hours of every day. Even assuming that Detective Hayburns's testimony can be contorted to state that Miley was near Jessica twenty-four hours a day, we still find that the state's evidence is insufficient.

■ The state's circumstantial evidence does not prove that Miley was the one who abused Jessica beyond a reasonable doubt. The state's circumstantial evidence indicates that Miley and Detty were the only ones with access to Jessica and that Jessica was abused. However, this does not prove beyond a reasonable doubt that Miley abused Jessica. Rather, it leads to the possibility that either Miley or Detty abused Jessica. Reasonable doubt is present when jurors cannot say they are firmly convinced of the truth of the charge. R.C. 2901.05(D); *State v. Frazier* (1995), 73 Ohio St.3d 323, 330, 652 N.E.2d 1000, 1008. A fifty percent possibility does not satisfy the standard of beyond a reasonable doubt. Therefore, reasonable minds could only reach the conclusion that the state did not prove beyond a reasonable doubt that Miley abused Jessica.

■ The state's circumstantial evidence also does not prove that Miley recklessly violated a duty to protect Jessica from abuse or to seek treatment for the abuse. The culpability element of a violation of R.C. 2919.22(A) is recklessness, which is the disregard of a known risk. Therefore, for Miley to have recklessly violated a duty to protect Jessica from abuse, he either had to know of the abuse and do nothing or be reckless in not discovering the abuse.

The state theorizes that Miley either should have been put or was on notice of possible troubles since he was with Jessica twenty-four hours a day. There is no evidence that Miley observed Jessica twenty-four hours a day and would have seen the abuse. The state also presented no evidence that Miley disregarded a known risk in permitting Detty or her eighteen-month-old son to be near Jessica. Nevertheless, Miley might have been on notice of possible problems. It seems a

reasonable inference that Jessica would have cried when the injuries were inflicted. However, if Miley was on notice of possible problems and had a duty to investigate further, what would he find? Although Jessica would likely be crying, all babies cry. There was no testimony regarding how Jessica might react to the infliction of these injuries, and we therefore cannot assume that Jessica's crying was longer or louder than normal. A thorough investigation would also have included checking for any outward signs of abuse. However, the doctors uniformly testified that Jessica had no marks or lacerations on her. Therefore, Miley would not have been on notice of possible child abuse if he had investigated Jessica's cries.

Miley may have seen or heard Jessica being abused. However, it is also true that Miley may not have seen or heard Jessica being abused. Reasonable doubt is present when jurors cannot say they are firmly convinced of the truth of the charge. R.C. 2901.05(D). We find that reasonable minds could only conclude that the state has not proven beyond a reasonable doubt that Miley had notice of the child abuse.

This case is troubling. It seems apparent that Jessica was abused. The state would have us focus on these injuries. We agree, the injuries are horrific.[2] However, the state was required to produce sufficient evidence if it wished to convict Miley of child endangerment, and it has not done so. After considering possible duties that Miley may have recklessly violated, we find that reasonable minds could only reach the conclusion that the evidence failed to prove beyond a reasonable doubt that Miley recklessly violated a duty of protection, care, or support that created a substantial risk to the health or safety of Jessica. Accordingly, the judgment of the trial court is reversed.

*Judgment reversed.*

KLINE and STEPHENSON, JJ., concur.

HARSHA, J., concurs in judgment only.

---

2. We affirmed the granting of permanent custody of Jessica to the Ross County Children Service Agency in *In re Miley* (Dec. 7, 1995), Ross App. No. 95CA2137, unreported, 1995 WL 750574.