OPINION
Defendant, R. Lee Gaessler, appeals from his conviction and sentence for Criminal Trespass and Assault in violation of Sections 133.05(A)(1) and 135.03(A) of the Revised Code of General Ordinances of the City of Dayton.
In 1998, Gaessler lived in an apartment building owned and operated by the Dayton Metropolitan Housing Authority ("DMHA"). On March 30, 1998, Gaessler was charged with Criminal Mischief in violation of R.C.G.O. 133.04(A) The charges arose from an incident involving his alleged tampering with a bulletin board. As a result of this incident and other complaints against Gaessler, DMHA filed proceedings to evict him.
Gaessler entered into a written agreement with DMHA in which he agreed to vacate his apartment by September 4, 1998. Thereafter, an investigative officer for the DMHA received a complaint from another resident alleging that Gaessler was overheard threatening to "get a gun" and "take seven or eight people with him" when he moved out of his apartment. As a result, Gaessler was served by a City of Dayton Police Officer with a "trespass notice" on August 28, 1998. The Officer explained the terms of the notice and his appeal rights to Gaessler. Gaessler signed the notice and, per procedure, his photograph was taken. Gaessler vacated the apartment on September 8, 1998.
On October 1, 1998, the manager of the DMHA apartment complex, John Bradley, saw a van that he knew belonged to Gaessler illegally parked on the property. Bradley entered the building closest to the van and proceeded to Helen Poole's[1] apartment. When questioned by Bradley, Poole acknowledged that Gaessler was in her apartment.
Bradley left Poole's building and contacted his assistant manager, whom he asked to call the police and DMHA security. Bradley waited in front of the building for the police to arrive. Soon, Gaessler emerged from the building and encountered Bradley waiting there. Gaessler and Bradley engaged in a physical altercation. Afterwards, Gaessler left in his van before the police arrived. On October 7, 1998, Bradley filed a complaint against Gaessler for Criminal Trespass, in violation of R.C.G.O. 133.05(A)(1), and Assault, in violation of R.C.G.O. 135.03(A), arising from the incident.
Gaessler was charged with Criminal Mischief, Criminal Trespass, and Assault. The jury found Gaessler not guilty of Criminal Mischief, but guilty of Criminal Trespass and Assault. On October 9, 1999, Gaessler was sentenced to thirty days in the Dayton Human Rehabilitation Center (DHRC) for the Criminal Trespass conviction and ninety days in DHRC plus a $100.00 fine for the Assault conviction. Gaessler's thirty and ninety day sentences were suspended on the condition that Gaessler serve three years unsupervised probation, serve thirty days house arrest, and agree to stay off of DMHA property.
Gaessler filed timely notice of appeal. He presents three assignments of error.
 FIRST ASSIGNMENT OF ERROR WHEN VIEWING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION, ANY RATIONAL TRIER OF FACT COULD NOT HAVE FOUND THE ESSENTIAL ELEMENTS OF THE CRIME BEYOND A REASONABLE DOUBT.
 The error that Gaessler assigns is the legal standard for evidence sufficient for conviction, which the prosecution must introduce in order to withstand a defendant's Crim.R. 29 motion for judgment of acquittal. That standard contemplates evidence from which "reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261.
A Crim.R. 29 motion may be made at the conclusion of the state's case, at the conclusion of all the evidence, or after the verdict or discharge of the jury. Any error in denying a motion made at the conclusion of the state's case is waived if the defendant, after presenting a defense, fails to renew the motion at the close of all the evidence. State v.Miley (1996), 114 Ohio App.3d 738; City of Dayton v. Rogers (1979),60 Ohio St.2d 162.
Gaessler moved for a judgment of acquittal at the close of the State's case-in-chief. The motion was denied. He presented evidence in his own defense, but failed to renew his motion at the close of all the evidence. Therefore, the error he has assigned is waived.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR AS A MATTER OF LAW THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT RULED THAT SINCE THE STATE DEMONSTRATED THAT THE DEFENDANT HAD BEEN SERVED NOTICE OF TRESPASS THAN [SIC] A TENANT'S RIGHTS ARE LIMITED
 Gaessler's assignment of error presents two issues: 1) whether the trial court erred when it ruled that the City proved that Gaessler was served notice of trespass; and 2) whether the trial court erred when it ruled that this notice limits another tenant's right to invite the noticed person onto the property.
Gaessler does not point to any passage in the record which demonstrates that the trial court "ruled" that Gaessler had been served notice of trespass. Upon our independent review of the record, we find no evidence that the trial court ruled that the City had proven that Gaessler had been served notice of trespass. We do, however, find ample evidence to support a finding by the jury that Gaessler had been served with a notice of trespass on August 28, 1998.
 During the trial, Officer Michael August of the Dayton City Police Department testified that he was asked to assist DMHA authorities serving a trespass notice on Gaessler. Officer August testified regarding what transpired when they found Gaessler:
 Q. (By prosecutor Mary Welsh) . . . I'm going to show you what's marked as Plaintiff's Exhibit 4 . . . and ask you if you could identify what you see there?
 A. That is a Polaroid picture taken by um, uh, one of the Dayton officers where I was explaining to Mr. Gaessler about the trespass notice and I'm also in the picture in my Dayton police Uniform.
Q. What was going on [when you encountered Gaessler]?
 A. At first uh, DMHA security had made contact with him and was letting him know that they were serving a trespass notice to him. Um, he was very agitated. . . . I stepped in um, since he was agitated and explained to him about the notice.
 Q. Okay. I'm going to show you what's marked as Plaintiff's Exhibit 5 and ask you if you recognize that?
A. Yes.
Q. What is it?
 A. This is a DMHA criminal trespass notice um, that we use when we . . . trespass someone out of DMHA housing. Explains the law uh, tells why they were trespassed out and also um, gives a brief description who they are um, also tells about the appeals process. If you have the right to appeal the process if you feel that you shouldn't be trespassed off. There's a box about that. And also the witnesses and the location, time and date.
Q. . . . And this notice is directed to Lee Gaessler?
A. Yes, it is.
 Q. Okay. Down here at the bottom there are some signatures and this witness line to — we've identified this strange scroll as Mr. [Siafa, chief of DMHA security] this witness line uh, who has signed that?
A. That is signed by me.
Q. . . . But he [Gaessler] signed his name as well?
A. Yes, he did.
Q. Okay.
A. And I was the one witness.
Trial Transcript pp. 129-32.
Marvis Burdette, an investigative protective officer for DMHA, testified that a second trespass notice was prepared for Gaessler, which was to replace the first notice. However, the second notice was not served on Gaessler, and Gaessler testified that he had no knowledge of a second notice. Gaessler argues that the existence of the second notice renders the first notice invalid.
On the record before us, there is no evidence that the trial court ruled that the first notice was valid or that it was invalidated by the second notice. We must, therefore, presume that the first notice was valid and effective. The question of whether Gaessler was served with the first notice was for the jury.
Gaessler also argues that the trial court erred when it ruled that the first trespass notice limited Ms. Poole's right to invite Gaessler onto the property. Gaessler again does not indicate where in the record the trial court ruled that the first trespass notice limited Poole's rights as a DMHA tenant.
In our review of the record, we find that counsel for Gaessler was restricted by the trial court from cross-examining Bradley regarding a DMHA tenant's right to invite a trespassed person onto the property. In argument outside of the presence of the jury, the court stated:
. . . I agree in general that a tenant in — in any uh, leasehold agreement would have the right to extend the privilege to have visitors to certain individuals. However, uh, I do not believe that this right is — has no limits. And in this case if the prosecution establishes that Mr. Gaessler was served with a notice — a trespass notice not to go on any DMHA properties, then that was a limitation on her right and the DMHA authorities represented by Mr. Bradley in this case, have introduced evidence, the prosecutor has introduced evidence that a trespass notice was served on Mr. Gaessler prior to the date of October 1st when the trespass allegedly took place.
 . . . at that point, Mr. Gaessler's privilege to enter the DMHA premises then was removed if the Jury finds that the trespass notice was served on him prior to October 1st, then his privilege to enter the premises was removed . . . and that's why I must sustain the objection and not allow you to go into that.
Trial Transcript at 86-87.
We agree with the reasoning of the trial court. Poole derived her rights as a tenant from the DMHA. Consequently, Poole's rights as a tenant are subject to DMHA's authority to bar Gaessler from the property because Poole took her authority from the DMHA. Further, the City notes that the DMHA trespass program has been held a valid method of law enforcement on DMHA property. See Mark Brown, et al., v. Dayton Metro.Hous. Auth., et al. (Aug. 25, 1993), S.D.Ohio No. C-3-93-037, unreported. Gaessler's only legal recourse was to appeal the trespass notice, which he did not do.
Furthermore, there is no evidence that Gaessler was actually invited into Poole's apartment building. Gaessler testified that he was planning to pick Poole up in front of the building to take her to a doctor's appointment. When Poole failed to appear, Gaessler proceeded inside the building to Poole's apartment.
The court did not abuse its discretion by limiting this inquiry. Accordingly, Gaessler's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT COMMITTED REVERSABLE [SIC] ERROR IN DENYING DEFENDNAT [SIC] INQUIRY INTO COMPLAINANT'S CHARACTER AND CREDIBILITY.
 Gaessler argues that the trial court abused its discretion by limiting Gaessler's inquiry into Bradley's character and credibility during cross-examination. In support of this assignment, Gaessler argues that questioning Bradley regarding his personal biases towards Gaessler was probative of Bradley's credibility and character and therefore should have been permitted.
App.R. 12(A)(2) states that "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) directs the appellant to include in his brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." (Emphasis added).
We are unable to address this assignment of error because Gaessler, contrary to App.R. 16(A)(7), merely makes conclusory statements regarding the trial court's failures. Gaessler does not point to specific instances in the transcript of the trial court's alleged abuses of discretion. It is Gaessler's duty to identify in the record any error or abuse of discretion that he is asserting on appeal. Hawley v. Ritley
(1988), 35 Ohio St.3d 157; Kuntz v. Director of Ohio, EPA (April 21,1998), Montgomery App. No. 16429, unreported. "It is not the duty of anappellate court to search the record for evidence to support anappellant's argument as to any alleged error." State v. Watson (1998),126 Ohio App.3d 316, 321.
Accordingly, we find that Gaessler has failed to comply with App.R. 16(A)(7). Gaessler's third assignment of error is overruled.
Having overruled each assignment of error, we will affirm the judgment from which this appeal was taken.
WOLFF, J. and GLASSER, J., concur.
Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
 ___________ GRADY, P.J.
[1] The person we call "Helen Poole" is also referred to as "Helen Cole" and "Helen Pool" throughout the record. While it is unclear which name is the correct one, for the sake of uniformity we have chosen to call her "Helen Poole."