OPINION
Brian Ball is appealing the judgment of the Kettering Municipal Court finding him guilty of violating a civil protection order.
Brian Ball, Appellant, and Carol Rice had been involved in a relationship for several years during which two children were born. After having separated, Ms. Rice sought and obtained a domestic violence ex parte civil protection order on May 27, 1999. The civil protection order required Mr. Ball to remain at least 500 yards from the apartment where Ms. Rice lived in Washington Township, Montgomery County, Ohio. On July 22, 1999 at 1:53 a.m., Mr. Ball was found walking around an apartment complex which is situated behind Ms. Rice's apartment. Ms. Rice's apartment was easily viewable from where Mr. Ball's vehicle was parked. Two officers at trial testified that Mr. Ball's vehicle was within 100 yards of Ms. Rice's apartment. The officers found Mr. Ball within 50 yards of his vehicle, in the opposite direction from Ms. Rice's apartment. Once the police determined that a protection order was issued against Mr. Ball he was placed under arrest. While inventorying Mr. Ball's car, an officer found a copy of the protection order, which listed Ms. Rice's address.
At trial, Mr. Ball testified that he was at the Yankee Vineyards at the Arbors (hereinafter "the Arbors") apartments because he was looking for a rare vehicle, a Ford Merkur, which was reportedly for sale. Mr. Ball owned a 1986 Ford Merkur, which had a damaged fuel rail, making it inoperable. Mr. Ball had been informed that evening by a coworker that a Merkur was parked in an apartment complex off of Yankee Street near the Dayton Mall and was marked for sale. As Merkurs and replacement parts are very difficult to find, Mr. Ball, who works second shift, testified that after speaking with this coworker he rushed to find the vehicle. Mr. Ball testified that he drove around the parking lots of two apartment complexes and then parked his car near the Arbors' clubhouse in order to see if anyone had posted information about a Merkur for sale. Mr. Ball testified that although his vehicle was parked within viewing distance of Ms. Rice`s apartment, it was at least 3/4 of a mile away, not within the 500 yard prohibited area.[1] Mr. Ball testified that prior to the officers informing him, he was not aware how close he was to Ms. Rice's address. According to Mr. Ball's testimony, he knew the entrance to Ms. Rice's apartment was on Washington Village Drive and believed the only entrance to the Arbors apartments was on Yankee Street, unaware of an additional entrance on Washington Village drive.
On July 22, 1999, the State of Ohio (hereinafter "State") filed a criminal charge against Mr. Ball in the Kettering Municipal Court, accusing Mr. Ball of violating R.C. 2919.27, a violation of a protection order. Mr. Ball pled not guilty and the case proceeded to trial on April 26, 2000. The jury found Mr. Ball guilty and the trial court sentenced him to 180 days of incarceration. Mr. Ball filed his notice of appeal on May 17, 2000. Mr. Ball requested and received an order staying the execution of his sentence pending the outcome of this appeal.
Mr. Ball asserts two assignments of error:
 1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ACQUIT DEFENDANT, SUA SPONTE, PURSUANT TO OHIO CRIMINAL RULE 29, AS THE SAME FAILED TO PRESENT CREDIBLE EVIDENCE PROVING THAT DEFENDANT CAME WITHIN FIVE HUNDRED YARDS OF THE PROHIBITED RESIDENCE.
 2. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant's first assignment of error:
Mr. Ball argues that the State failed to prove that he was within 500 yards of Ms. Rice's apartment, which was an essential element of the State's case, and thus the trial court should have sua sponte acquitted him. We disagree.
A trial court is authorized to sua sponte acquit a defendant by Crim. R. 29(A) which provides "[t]he court * * * on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense * * *." A Crim. R. 29 motion cannot be granted when based on the evidence reasonable minds could reach different conclusions as to whether the State proved each element of the crime beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, 9 O.O.3d 401. Thus, an appellate court will only reverse a trial court's judgment on a Crim. R. 29 motion for acquittal if reasonable minds could only conclude that the evidence failed to prove beyond a reasonable doubt each element of the crime. State v. Miley (1996), 114 Ohio App.3d 738, 742.
R.C. 2919.27 provides that no person shall recklessly violate the terms of a protection order, which may include proximity restrictions. An essential element which the state has the burden of proving in a violation of R.C. 2919.27 is that the defendant violated the particular terms of the protection order. In State v. Cates, in which the distance between the defendant and a building was also an essential element of the crime, the police officer's approximation or walking off of the distance between a school and drug activity was sufficient measurement. (Nov. 21, 2000), Franklin App. No. 00AP-73, unreported.
In the instant action, Ms. Rice's civil protection order, stated:
 [Mr. Ball] is ordered to stay away from [Ms. Rice] and any other family member and [Mr. Ball] shall not be present within two blocks or 500 yards of them, wherever they may be found, even with their permission. This includes the buildings, grounds, and parking lots of their homes, businesses, places of employment, schools, day care centers, and babysitters.
(State's trial exhibit A). Deputy Madden testified on behalf of the State that he was experienced at measuring distances as an evidence technician and approximated the distance from Mr. Ball's car to Ms. Rice's apartment as 100 yards. (Tr. 33-34). Additionally, Deputy Bemis, who Deputy Madden testified walked off the distance, testified that the distance was 100 yards and that it was well within two blocks. (Tr. 37, 88, 91). However, Mr. Ball testified that the distance was approximately 3/4 of a mile. (Tr. 139). Therefore, the distance was a fact in dispute which was appropriately put to the jury. The State's evidence in the form of the two deputies' testimony was sufficient that reasonable minds could reach the conclusion that the State had proven beyond a reasonable doubt that the distance was 100 yards. Thus, the trial court did not err in failing to sua sponte acquit Mr. Ball and his first assignment of error is without merit and overruled.
Appellant's second assignment of error:
Mr. Ball argues that his counsel provided ineffective assistance because a witness's response to one of his counsel's questions entered derogatory hearsay statements into evidence before the jury. We disagree.
In order for an appellate court to find that trial counsel provided ineffective assistance it must find both (1) that defense counsel's conduct fell below an objective standard of reasonableness and (2) that a reasonable probability exists that but for the defense counsel's errors the outcome of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011. Further, since a licensed attorney in the state of Ohio is presumed competent, the defendant has the burden to prove both prongs of the test. State v. Jackson (1980), 64 Ohio St.2d 107, 18 O.O.3d 348. Additionally, a strong presumption exists that defense counsel's performance amounted to reasonable assistance, and counsel's conduct may be merely trial tactics which do not rise to the level of ineffective assistance of counsel. Bradley, supra.
The following exchange occurred at trial:
Q. [defense counsel] What else did Ms. Rice tell you?
 A. [Dep. Bemis] She became very upset when I told her he was near her house, or near her apartment complex. She said that he had stalked her in the past. He has assaulted her and her children in the past. And, he had sexually assaulted her. And, she was deathly afraid of him. She started crying and became hysterical.
 Q. Okay. And, she also told you that he had previously been convicted of domestic violence?
 A. I don't recall that. She said something about a case in Middletown that they were still going through I think.
Q. Okay. And, she told you he'd been convicted of a felony, didn't she?
A. Yes, she said, I remember something about a felony.
 Q. And, you later went out and checked that and found that what she told you wasn't true. * * * Is that correct? * * *
 A. I don't. I didn't run a criminal history check. No. I don't believe I did. * * *
 Q. You never found any evidence that he'd ever been convicted of a felony did you?
A. No, sir I didn't. It wouldn't come up on my LEADS.
Q. Or that he'd been convicted of domestic violence, did you?
A. I never ran anything like that. It wouldn't have come up.
 Q. As a matter of fact, you never found any evidence to indicate that Mr. Ball was in and around Ms. Rice's apartment did you? * * *
 Q. * * * I believe you indicated that you didn't know Ms. Rice before that evening?
A. Correct, sir.
 Q. You had no way to gauge whether she was being [honest] with you or being dishonest with you did you?
A. No, sir I didn't. I just took her at her word.
(Tr. 86-87, 92) (Emphasis added).
Mr. Ball argues that the italicized portion of the above statement demonstrates ineffective assistance of counsel. Mr. Ball argues that the question elicited damaging hearsay testimony from Dep. Bemis, portraying Mr. Ball before the jury as a physical and sexual abuser. Additionally, as the subject was opened on cross examination, the State elicited further statements from Dep. Bemis about Ms. Rice's statements and demeanor during redirect examination. (Tr. 91). Although these statements may have been damaging to Mr. Ball's case, defense counsel's questions were clearly designed to portray Ms. Rice as a dishonest person, who lied to police that evening and to the court to obtain the protection order. As the jury had heard that a domestic violence civil protection order was issued against Mr. Ball, this was a valid trial tactic to attempt to counter the negative concepts the jury received from the protection order. Simply because the question elicited a negative response rather than the hoped for response does not mean defense counsel was rendered ineffective by asking the question. Therefore, Mr. Ball's trial counsel did not render ineffective assistance and his second assignment of error is without merit and overruled.
FAIN, J. and GRADY, J., concur.
[1] In the State's appellate brief, it appears to argue that Mr. Ball by admitting that his vehicle was parked 3/4 of a mile from Ms. Rice's apartment was admitting that he was within 500 yards of his apartment. This is incorrect; 500 yards is 1500 feet while 3/4 mile is 3960 feet.