DECISION AND JUDGMENT ENTRY
{¶ 1} This accelerated case comes before the court on appeal from the Wood County Court of Common Pleas. Because we find that the appellant's theft conviction is supported by the weight of the credible evidence in the record, we affirm the judgment of the trial court.
 {¶ 2} The facts giving rise to this appeal are as follows. Beginning in 1999, appellant, Ray Gates II, owned North Dixie Manufacturing ("North Dixie"). North Dixie was a limited liability company engaged in the sale of modular homes. North Dixie had a contractual relationship with Summit Housing Group, a division of Patriot Sales Inc. The parties entered into a retail distribution agreement which provided that North Dixie was a non-exclusive distributorship for manufactured homes and accessories provided by Summit. In sum, North Dixie would solicit opportunities to sell manufactured homes. Through that process it would initiate a purchase agreement and then either sell a home from its inventory or place an order for a home. Once North Dixie received payment from a customer, pursuant to its retail distribution agreement, Patriot was to be paid as follows:
 {¶ 3} "In the event that [North Dixie] receives any funds from a purchaser of any Unit prior to final closing and such funds (in the aggregate), when subtracted from the purchase price leave a balance outstanding on the Purchase price less than the invoice price, [North Dixie] shall immediately remit to SUMMIT the difference between the balance outstanding and the invoice price by cashier's check or other immediately available funds. Notwithstanding the above, all partial payments shall be deemed to be held in trust by [North Dixie] for the benefit of SUMMIT. Upon receipt by SUMMIT of payment in full by cashier's check or other immediately available funds of the Invoice price plus any other charges due to SUMMIT hereunder, Summit shall release the certificate of title or certificate of origin for the Unit sold by [North Dixie]."
 {¶ 4} North Dixie was neither a franchisee nor an agent of Patriot's. It was only when North Dixie paid Patriot for a particular home that the home could be delivered to the customer.
 {¶ 5} Pamela Howard, bookkeeper for North Dixie, testified that in 2001, North Dixie was in financial trouble. Patriot sent its corporate controller, Robert Davis, to assist appellant. Davis testified that in 2001, North Dixie was in a "sold out of trust" status ("SOT"). This meant that North Dixie could not sell any new homes because of money it owed Patriot. Specifically, Davis testified that Patriot had loaned North Dixie $75,000 in January 2001 for operating expenses. North Dixie had also collected money from a customer for the purchase of a home but had not turned any of the proceeds over to Patriot.
 {¶ 6} On May 14, 2001, 81 year old James Sheets and his 82 year old wife, Jane Sheets, made a $1,000 down payment towards a $63,000 North Dixie modular home. The next day, May 15, they gave North Dixie a check for $49,000 towards the home. They were told their home would be ready by July 4, 2001. The Sheets paid an additional $8,000 for a foundation and $2,500 for steel beams. The Sheets never received their home. In September 2001, North Dixie filed for bankruptcy.
 {¶ 7} On September 5, 2002, appellant, Ray Gates II, was indicted on four counts of theft, a violation of R.C. 2913.02(A)(3). Following a trial to the bench, he was found guilty of theft by deception as to the Sheets. The court further found that the victims were elderly persons and that the amount taken was greater than $20,000. Appellant was sentenced to five years on community control sanctions. He now appeals setting forth the following assignments of error:
 {¶ 8} "I. THE TRIAL COURT ERRED IN DECLINING TO GRANT APPELLANT'S MOTION FOR ACQUITTAL AFTER THE PRESENTATION BY APPELLEE OF EVIDENCE INSUFFICIENT TO SUSTAIN A CONVICTION OF THEFT BY DECEPTION."
 {¶ 9} "II. THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF THEFT BY DECEPTION CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 10} In his first assignment of error, appellant contends the court erred in denying his motion for acquittal on Count 2 of the indictment. Appellant, however, failed to renew his motion for acquittal after the close of all of the evidence. It is well-established that where a defendant, after moving for a directed verdict at the conclusion of the state's case, offers evidence on his own behalf, any error which might have occurred in overruling the motion is waived. State v. Miley,
(1996), 114 Ohio App.3d 738. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 11} In his second assignment of error, appellant contends his conviction for theft by deception was against the manifest weight of the evidence.
 {¶ 12} The elements of theft by deception, a violation of R.C.2913.02(A)(3) and a felony of the second degree are as follows: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: *** By deception;" R.C. 2913.01(A) defines deception as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 13} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 {¶ 14} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 21, 42.
 {¶ 15} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 16} The evidence shows that when appellant accepted $50,000 from the Sheets in May of 2001, appellant was in a "SOT" phase with Patriot. Pursuant to the retail distribution agreement appellant signed, he knew he was without power to provide the Sheets with a home in exchange for their payment. Bookkeeper Pamela Howard testified that even after appellant told her of his intent to file bankruptcy, he continued to take money for homes he could not deliver. James and Jane Sheets testified that they were assured their home would be ready by July 4, 2001. The Sheets never received their home or a refund of their money. Appellant testified that he knew in July 2001 that he would not be able to obtain a home for the Sheets because of his cash flow problem. Appellant testified he nevertheless continued to take orders for new homes. Based on the foregoing testimony, we conclude that appellant's conviction for theft by deception is not against the manifest weight of the evidence. Appellant's second assignment of error is found not well taken.
 {¶ 17} On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
 JUDGMENT AFFIRMED.