OPINION
{¶ 1} Defendant, David Bragg, was convicted by the trial court of aggravated menacing, R.C. 2919.22(A), and assault, R.C. 2903.13, both first degree misdemeanors, on guilty verdicts returned by a jury at the conclusion of Defendant's trial. The court sentenced Defendant to serve two consecutive *Page 2 
terms of incarceration of one hundred and eighty days each. Defendant filed a timely notice of appeal.
 {¶ 2} At his trial, the alleged victim of these offenses, Darcy Burk, testified that she and Defendant resided at 656 Homecrest Avenue in Riverside, Montgomery County, Ohio. (T. 18). After identifying Defendant for the record, Burk testified to events that took place on May 17, 2007.
 {¶ 3} Burk testified that Defendant awoke at about 6:00 a.m., that she prepared a lunch for him to take with him when he left for work, and that Defendant returned at about 12:00 p.m. Burk testified that when Defendant knocked on the door, "I opened up the door and he was there saying that he (sic) come home before he had to go to court" on a traffic charge. (T. 20).
 {¶ 4} According to Burk, Defendant began yelling at Burk, calling her names, and accusing her of cheating on him. Burk denied Defendant's accusations. The argument escalated into physical violence, and Defendant slapped Burk in the face, hit her in the head, and kicked her in the legs with his work boots. Just before leaving to go to court, Defendant threatened to harm Burk, her mother, and her children if she called police. Burk said she was afraid of Defendant and believed he would carry out his threats to harm her and her *Page 3 
family.
 {¶ 5} Burk testified that after Defendant drove away she went to a neighbor's house and called 911. When police arrived they observed scratches and bruises on Burk's face and legs, and they photographed those injuries. They also noticed that Burk was very upset, crying and trembling, and that her voice was shaking. Police observed a hole in the wall behind the front door, which Burk said Defendant created when he tried to punch her but missed and hit the wall.
 {¶ 6} Burk told police that Defendant had gone to Area Two District Court in Huber Heights. Police located Defendant there. Police observed a fresh cut on one of Defendant's knuckles on his left hand. Despite Defendant's claims that he did not go home before coming to court, or assault or threaten Burk, police arrested him on the charges of which Defendant was subsequently convicted.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR DISMISSAL PURSUANT TO OHIO CRIMINAL RULE 29."
 {¶ 8} When considering a Crim. R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the state, and determine whether reasonable minds could reach different conclusions on whether the evidence *Page 4 
proves each element of the offense charged, beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261. The motion will be granted only when reasonable minds could only conclude that the evidence fails to prove one or more of the essential elements of the offense. State v.Miles (1996), 114 Ohio App.3d 738.
 {¶ 9} A Crim. R. 29 motion challenges the legal sufficiency of the evidence. A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. On review of a trial court's denial of a Crim. R. 29 motion, the proper test to apply is the one set forth in paragraph two of the Syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *Page 5 
proven beyond a reasonable doubt."
 {¶ 11} Defendant argues that the trial court erred in overruling his Crim. R. 29 motion for acquittal made at the close of the State's case on his claim that the State had failed to establish the venue of the two offenses with which he was charged.
 {¶ 12} "Jurisdiction" refers to the authority of a court to hear and determine the claims for relief presented in an action, whereas "venue" refers to the judicial district in which conduct giving rise to the claims is alleged to have been committed and where it is therefore to be tried. State v. Grinnell (1996), 112 Ohio App.3d 124.
 {¶ 13} R.C. 1907.01 provides:
 {¶ 14} "There is hereby created in each county of the state, in which the territorial jurisdiction of a municipal court or municipal courts is not coextensive with the boundaries of the county, a court to be known as the county court. The county court shall have jurisdiction throughout a county court district that shall consist of all territory within the county not subject to the territorial jurisdiction of any municipal court."
 {¶ 15} Per R.C. 1907.02(A), a county court has jurisdiction to hear and determine alleged violations of any misdemeanor *Page 6 
offense committed within its territory.
 {¶ 16} Montgomery County is not served by a municipal court with county-wide jurisdiction, and the territory of Montgomery County in which the City of Riverside is located is not subject to the territorial jurisdiction of any municipal court in Montgomery County. See: R.C. 1901.01, 1901.02. The criminal complaint commencing the action in which the criminal charges against Defendant were tried was filed in Montgomery County Court for Area 2, in Huber Heights. The complaint alleged that the conduct constituting the offenses took place "at 656 Homecrest, City of Riverside, Montgomery County, Ohio."
 {¶ 17} In State v. Gribble (1970), 24 Ohio St.2d 85, paragraph two of the syllabus, the Ohio Supreme Court held:
 {¶ 18} "In the prosecution of a criminal case, it is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit. (State v. Dickerson, 77 Ohio St.34, 82 N.E. 969, followed.)"
 {¶ 19} The testimony of Darcy Burk establishes that the incident giving rise to the assault and aggravated menacing charges against Defendant occurred on May 17, 2007, shortly *Page 7 
after 12:00 noon, at 656 Homecrest Avenue, Riverside, in Montgomery County, Ohio. Burk's testimony that the offenses occurred at the residence she shared with Defendant, coupled with her testimony identifying the location of that residence by street address, city, county, and state, was sufficient to establish venue beyond a reasonable doubt.
 {¶ 20} Viewing the totality of the evidence in a light most favorable to the State, as we must, we conclude that a rational trier of facts could find that venue was proved, beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence, and the trial court properly overruled Defendant's Crim. R. 29 motion for acquittal.
 {¶ 21} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 22} "THE CONVICTION OF THE DEFENDANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 23} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), *Page 8 20 Ohio App.3d 172, 175:
 {¶ 24} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 25} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 26} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 27} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a *Page 9 
judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."
 {¶ 28} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 29} Defendant argues that the jury lost its way in finding him guilty of assault and aggravated menacing because the only eyewitness to the crimes, Darcy Burk, was not a credible witness. Defendant points out that Burk's testimony at trial contradicted the testimony of both Paul and Bambi Houston that Burk came to their home in the early morning hours on the following day, of May 18, 2007, and lied about the reason for Defendant's incarceration and asked for money to help her post Defendant's bail. Defendant additionally points out that Burk's testimony regarding the time when Defendant came home from work and assaulted and threatened her conflicts with the testimony of Owen Wells, Defendant's co-worker, *Page 10 
and Mark Tipton, Defendant's supervisor, concerning the time Defendant left work.
 {¶ 30} The credibility of the various witnesses who testified and the weight to be given to their testimony were matters for the trier of facts, the jury, to decide. DeHass. The testimony of Darcy Burk and the police officers regarding the pivotal issue, Defendant's conduct in assaulting and threatening Burk and the officer's observation of her injuries, is not contrary to the guilty verdicts. The jury did not lose its way in this case simply because it chose to believe the State's witnesses rather than Defendant's witnesses, which the jury could properly do.
 {¶ 31} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 32} Defendant's second assignment of error is overruled.
The judgment of the trial court will be affirmed.
 FAIN, J. And DONOVAN, J., concur. *Page 1