[Cite as *State v. Flint*, 2024-Ohio-1904.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-16 |
| | : | |
| v. | : | Trial Court Case No. 23-CR-00068 |
| | : | |
| PATRICK J. FLINT, JR. | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 17, 2024

. . . . . . . . . . .

AMY E. BAILEY, Attorney for Appellant

DEBORAH S. QUIGLEY, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Patrick J. Flint, Jr., appeals from his conviction in the Darke County Court of Commons Pleas on one count of failure to provide notice of change of address. For the reasons that follow, the judgment of the trial court will be affirmed.

**I.      Facts and Procedural History**

{¶ 2} In 2016, Flint was convicted in Indiana (Randolph County Case No. 68D01-1209-FA-522) of one count of sexual battery, which caused him to be considered a Tier II sex offender in the state of Ohio. Resultantly, he is required to register with the sheriff's department every six months for 25 years. He failed to do so in 2021 and was convicted of failure to provide notice of change of address in Darke C.P. No. 21-CR-00044.

{¶ 3} On February 27, 2023, Flint came to the Darke County Sheriff's Office to inform Stacy McMiller, the Darke County Sex Offender Registration and Notification Act officer, that he had moved out of his previous home and was homeless. The next day he returned, told McMiller he was then living at either 310 or 320 East Fifth Street in Greenville; he was not exactly sure which, but he registered his new address as 310.

{¶ 4} A few days later, McMiller discovered that there was no 310 East Fifth Street; there were other addresses on the 300 block of East Fifth, but 310 was not one of them. On March 2, McMiller contacted Flint to inform him that he had registered an invalid address. He reported back to the sheriff's office and, despite being told that 310 East Fifth Street was not a valid address, he again registered it.

{¶ 5} Flint called the Darke County Sheriff's Office on March 17 to report that he was homeless and had been for a few days after being kicked out of "Alex and Alex's Old Lady's house" for allowing the police to search the property. The voice message he left did not give an address for "Alex and Alex's Old Lady's house"; in the message, Flint admitted he had "no clue where [he was] going to stay at" but said he might try to stay at a house on Grey Street.

{¶ 6} Flint's next contact with the sheriff's office was on March 21, when he came

in and reported that he was living in Greenville at 220 Wayne Avenue. McMiller advised him that he could not register or stay at that residence because it was too close to a school. The following day Flint called the office at 6:39 p.m. and explained that he had not come in to register that day because he fell asleep. He assured McMiller he would be there the next morning. Flint did not show up on the morning of March 23 as promised and was thus indicted on one count of failure to provide notice of change of address, a violation of R.C. 2950.05(F)(1) and R.C. 2950.99(A)(2)(b). When he arrived at the sheriff's office on March 24, he was arrested pursuant to a warrant on the indictment.

{¶ 7} The case proceeded to a bench trial on June 20, 2023. The court heard testimony from McMiller, Detective Rodney Baker, Detective Morrisa Reed, Detective Joseph Wolfe, and Adam Kolb, and it considered a dozen exhibits. On June 23, Flint was found guilty as charged; he was sentenced to a mandatory 36 months in prison.

{¶ 8} Flint has filed a timely appeal with two assignments of error.

## II.     Crim.R. 29/Sufficiency of the Evidence

{¶ 9} In his first assignment of error, Flint argues that the trial court erred in overruling his Crim.R. 29 motion for a judgment of acquittal.

{¶ 10} "When determining a Crim.R. 29 motion, the trial court must consider the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence the state presented, if believed, proves each and every element of the offense charged beyond a reasonable doubt." *State v. Sowry*, 2004-Ohio-399, 803 N.E.2d 867, ¶ 8 (2d Dist.), citing *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978). "A Crim.R. 29 motion must be

granted when reasonable minds could only conclude that the evidence fails to prove the elements of the offense." *Id.*, citing *State v. Miley*, 114 Ohio App.3d 738, 684 N.E.2d 102 (1996).

{¶ 11} When reviewing the denial of a Crim.R. 29(A) motion, the appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence. *State v. Jackson*, 2nd Dist. Montgomery No. 29343, 2022-Ohio-2805, ¶ 7; *State v. Page*, 2d Dist. Montgomery No. 26670, 2017-Ohio-568, ¶ 7. Because a Crim.R. 29 motion presents an issue of law, our review of the trial court's denial is de novo. *State v. Turner,* 2d Dist. Montgomery No. 18866, 2002 WL 10491, *4 (Jan. 4, 2002).

{¶ 12} In relevant part, R.C. 2950.05(A) states that if an offender is required to register as a sex offender, he or she "shall provide written notice of any change of residence address, and the offender * * * shall provide notice of any change of residence * * * to the sheriff with whom the offender * * * most recently registered the address[.]" Further, the offender "shall provide the written notice at least twenty days prior to changing the residence address[.]"

{¶ 13} If an offender becomes homeless and the "residence address change is not to a fixed address, the offender * * * shall include in that notice a detailed description of the place or places at which the offender * * * intends to stay and, not later than the end of the first business day immediately following the day on which the person obtains a fixed residence address, shall provide that sheriff written notice of that fixed residence address." R.C. 2950.05(A).

{¶ 14} During its case-in-chief, the State presented evidence that on February 27,

2023, Flint registered as homeless (Exhibit 4). The following day, he came into the Darke County Sheriff's Office to register a new address. He told McMiller that he was moving to 310 or 320 East Fifth Street in Greenville (he evidently was not sure which), but when it came time to register an official address, his written notice listed 310 East Fifth (Exhibit 5). A few days later, on March 2, 2023, Flint was informed that 310 East Fifth did not exist. He reported back to the office, but despite being told about the discrepancy, Flint again registered 310 East Fifth as his address (Exhibit 6). Therefore, to this point, he had not registered a valid address.

{¶ 15} Several weeks later, on March 17, 2023, Flint called and left a message with the Darke County Sheriff's Office to inform McMiller that he was homeless, had been for a few days, and was looking for a place to stay (Exhibit 3). He did not, however, provide written notice with a detailed description of the place he intended to temporarily stay. On March 21, 2023, Flint left another message reporting that he was living at 220 Wayne Avenue in Greenville (Exhibit 3). He was told that that house was too close to a school, so he was not permitted to stay there. On March 22, 2023, Flint called the office after business hours and, in his voicemail, he explained that he did not come in to register that day as planned because he fell asleep. He assured McMiller he would arrive the next morning. Flint did not show up on the morning of March 23 and was indicted. When he did come in on March 24, he was arrested. During the time period of March 17-24, Flint had not registered a valid residential address or a non-fixed address.

{¶ 16} Nevertheless, Flint contends that his homelessness served to excuse the non-compliance with his registration duties. He argues that, "[w]hen homeless, [he] was

only required to report a day after obtaining a fixed address." Appellant's Brief at 8. Contrary to that assertion, an offender must first register when he or she becomes homeless and then again within one day of finding a permanent residence.

{¶ 17} When a person becomes homeless, his or her address changes, which triggers the requirement to report the change. *State v. Ramsey*, 12th Dist. Fayette No. CA2022-02-003, 2022-Ohio-3389, ¶ 32. As noted earlier, R.C. 2950.05(A) states that if a residence change is not to a fixed address – if a person becomes homeless – that person must still include in his or her registration notice a "detailed description of the place or places at which the offender * * * intends to stay." Flint's calling to explain that he had been kicked out of his previous residence (which was a non-existent address) was not the same as giving a "detailed description of the place he will be staying." *See State v. Bizzell*, 2d Dist. Montgomery Nos. 25905, 25906, 2014-Ohio-726, ¶ 15 ("If an offender is homeless, he is to include in the notice a 'detailed description of the place or places' he intends to stay.").

{¶ 18} Further, to find that he was "only required to report a day after obtaining a fixed address" would be to frustrate the purpose of the statute, which is to "permit the sheriff's department to locate and keep track of sexually oriented offenders, even those who do not have permanent residences." *Ramsey* at ¶ 32. Without the requirement to give a "detailed description of the place or places at which the offender * * * intends to stay," a sexually oriented offender could essentially become homeless and not be required to register.

{¶ 19} The trial court did not err when it denied Flint's Crim.R. 29 motion because,

based on the evidence presented in the State's case-in-chief, a reasonable fact finder could have found that Flint had failed to register a valid address. His first assignment of error is overruled.

### III. Manifest Weight of the Evidence

{¶ 20} In his second assignment of error, Flint claims that his conviction was against the manifest weight of the evidence.

{¶ 21} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 172 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except "in the exceptional case in which the evidence weighs *heavily* against the conviction." (Emphasis added.) *Id.*

{¶ 22} Flint's chief argument here is that despite twice registering the non-existent 310 East Fifth Street address, he actually told McMiller that he was not sure if it was 310 or 320, a valid address. To bolster this argument, Flint points to testimony from two witnesses: McMiller admitted that Flint told her that he was either living at 310 or 320 East Fifth Street, and Detective Reed testified that Flint had mentioned the 320 East Fifth Street address.

**{¶ 23}** Detective Wolfe told the court that on March 8, 2023, he was dispatched to 320½ E. Fifth Street on a search warrant. (320 is a two-story house split into two apartments; 320 is the downstairs unit and 320½ is the upstairs unit.) We he arrived, Flint was in the backyard of the residence. Detective Wolfe testified that Flint told him he was living there and gave officers permission to go inside. Flint's other trial witness, Adam Kolb, testified that he lived at 320½ from February to March 2023 and frequently observed Flint at the apartment.

**{¶ 24}** On the other hand, the evidence received from those same witnesses was not universally in Flint's favor. For instance, Detectives Reed and Wolfe both testified that no personal items were found that linked Flint to the apartment at 320½, and Kolb admitted that while he saw Flint at the apartment regularly, he never actually saw Flint sleeping there and could not confirm that he ever had.

**{¶ 25}** But even if the trial court believed that Flint had resided for a time at 320½ East Fifth Street, that did not solve the fundamental problem that Flint never properly registered in accordance with the statute.

**{¶ 26}** On February 28, 2023, Flint gave written notice that he was moving to 310 East Fifth Street in Greenville. However, trial testimony confirmed that that was an invalid address. On March 2, Flint again gave 310 East Fifth Street as his address. Flint's notice of an invalid address did not satisfy the statute.

**{¶ 27}** On March 17, 2023. Flint called the Darke County Sheriff's Office to report that he was homeless. That did not comply with the statute because the notification was not in writing and did not give a detailed description of the place or places where he would

be staying. Then, on March 21, Flint reported that he was going to stay at 220 Wayne Avenue in Greenville. Once again, that registration was invalid because he was not permitted to live there due to its proximity to a school. Flint was given a chance to re-register on March 22, but he fell asleep. He failed to show up as promised on March 23 and was indicted.

{¶ 28} Based on the evidence presented at trial, we cannot say that the trial court lost its way when it found Flint guilty of failure to provide notice of change of address. The second assignment of error is overruled.

### IV.    Conclusion

{¶ 29} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


TUCKER, J. and LEWIS, J., concur.