DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas which, following a jury trial, found appellant, Edmund Rodriquez, guilty and sentenced him to a term of imprisonment. For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. Appellant was indicted on one count of promoting prostitution in violation of R.C. 2907.22(A)(3), a felony of the third degree. Appellant entered a plea of not guilty.
 {¶ 2} Appellant's trial commenced on May 22, 2002, and continued on May 23, 2002. On May 22, 2002, at the close of the state's case, counsel for appellant made a motion for acquittal pursuant to Crim.R. 29. The trial court overruled the motion. The defense presented its case. At the close of testimony, the motion for acquittal was renewed and overruled. On May 23, 2002, the jury found appellant guilty of promoting prostitution. The jury also made a finding that the person transported by appellant to engage in sexual activity for hire was a minor. On July 22, 2002, appellant was sentenced to a term of two years of incarceration. Appellant filed a timely notice of appeal.
 {¶ 3} Appellant sets forth the following four assignments of error:
 {¶ 4} "First Assignment Of Error
 {¶ 5} "The Trial Court Erred To Appellant's Prejudice By Denying His Rule 29 Motions For Acquittal.
 {¶ 6} "Second Assignment Of Error
 {¶ 7} "The Verdict Of The Jury Was Not Supported By Sufficient Probative Evidence In That It Could Not Have Found All The Essential Elements Of The Offense, As Described In O.R.C. § 2907.22(A)(3), Were Proved Beyond A Reasonable Doubt.
 {¶ 8} "Third Assignment Of Error
"The Verdict Of The Jury Was Against The Manifest Weight Of The Evidence In That It Was Not Proved Beyond A Reasonable Doubt That Appellant Violated O.R.C. § 2907.22(A)(3).
 {¶ 9} "FOURTH ASSIGNMENT OF ERROR
 {¶ 10} "The State Of Ohio Failed To Establish Venue, By Proof Beyond A Reasonable Doubt, Either For Purpose Of Trial, Or As An Operative Element Required For Conviction Under O.R.C. §2907.22(A)(3)."
 {¶ 11} At trial, Stephanie Williams, the minor arrested with appellant, testified. She testified that she was a 17 year old runaway on November 24, 2001, the night she and appellant were arrested. She testified that she came to Toledo in August of 2001. She started staying with appellant, his girlfriend Carrie, and their 11 children as well as other runaways. Stephanie stayed with them that summer until she was arrested for shoplifting a pair of shoes for Carrie and was sent back to her home county. She came back to Toledo in October of 2001 and began living with appellant and his family again. She testified that she felt bad because she did not have money to give appellant for food or for the house. Stephanie testified that appellant and his friend asked her to go out to truck stops and "sleep with people for money." At first she said no but appellant told her they needed money for a new house and for food. She testified that she felt sorry for them and agreed to go. Stephanie testified that most times appellant would take her to the truck stops but sometimes his friends would; that she would use a CB radio ("CB") in a truck to contact the truck drivers; that her CB call name was "Blue Eyes" and appellant's was "Big Ed;" that she would typically make $200-250 each night; and that she would not keep any of the money but would give it to appellant. She testified that she went to the truck stops 8 or 9 times for sexual activity.
 {¶ 12} Stephanie testified that the weekend before November 24, 2001, she met Horace, a truck driver, and that she was going to go to Wisconsin with him on the night of November 24th. Stephanie testified that she was not going to work the night of November 24th but she did work because appellant asked her to; that she went to Horace's truck to use his CB; and that she had sex with 2 people for money that evening until she saw the police officer. When she saw the police officer, she became scared; she could not find appellant and attempted to contact him on the CB. Eventually, she contacted appellant and was driven to where he was waiting for her. Two officers stopped appellant's car.
 {¶ 13} Stephanie testified that she initially lied to the police, using a name and social security number given to her by Carrie; eventually she told the police that she was a 17 year old runaway engaging in sexual activity for money and that appellant had brought her to the truck stop to work as a prostitute. After she was arrested, she was sent to a juvenile facility. Stephanie testified that she wrote to appellant and Carrie and told them she had not told the police about appellant because she did not want them to be mad at her.
 {¶ 14} On cross-examination, Stephanie testified that appellant "just knew" when he took her to the truck stop on the night of November 24th that she was going to work. On re-direct, Stephanie testified that on that evening both she and appellant knew she was going to work because she got dressed in dress pants and put on make-up. Stephanie testified that she changed from her regular sweat pants when she went to prostitute because she could not "go out in sweat pants and expect to get a whole bunch of money from people." She testified that she initially lied to the police as to who she was and told them she was married to appellant's cousin because that was "our plan."
 {¶ 15} On re-cross examination in regard to whether she told appellant she was going to the truck stop to prostitute herself on the night of November 24th, Stephanie testified:
 {¶ 16} "I didn't have to tell him. We already had an understanding. I had already been working for him. What did I have to say, we're going to work?" On redirect examination, Stephanie testified she had never been to the truck stop for any other reason than to prostitute herself for appellant.
Officer Doug Hutton of the Lake Township Police Department testified as to events of November 24th. He testified that he regularly patrolled the truck stop areas investigating criminal activity such as prostitution, drugs, and stolen property. Hutton testified that he first saw appellant in a vehicle parked in a restricted area of the truck stop; he spoke with appellant, asking for his license and the vehicle's registration. Hutton testified that appellant told him he had stopped at the truck stop to get something to eat and rest. Hutton testified that he told appellant to leave the premises and warned him about criminal trespassing on a truck stop. Hutton testified that he had a "funny feeling" and, therefore, stayed in the area and monitored his CB. Hutton testified that he heard a female going by the name of "Blue Eyes" calling "Big Ed" and asking "Where's he at?" and "Did he leave yet?" Hutton also heard Big Ed tell Blue Eyes: "Okay, knock it off for awhile until he goes." Hutton testified that this comment lead him to believe that there was prostitution going on. He continued to monitor the CB and saw appellant leave; later he heard Big Ed tell Blue Eyes to have another individual drive her to a second truck stop. Hutton testified that he drove to the second truck stop and saw appellant arrive. A second vehicle arrived and Hutton saw a white female exit it and enter appellant's vehicle. Hutton followed appellant's vehicle and stopped it when appellant failed to use a turn signal. A second officer with the Lake Township Police Department arrived and the officers separated appellant from Stephanie. Initially, the officers obtained inconsistent stories from appellant and Stephanie as to who she was and how they were related. Eventually, Stephanie admitted to Hutton that she had prostituted herself.
 {¶ 17} The state rested and appellant presented his defense. Carrie testified that Stephanie was a friend of her daughter and Carrie allowed Stephanie to stay with her, appellant and their 11 children for a couple of weeks. Carrie denied knowing what Stephanie did in her spare time and testified that Stephanie had a friend that worked at the truck stop and would ask appellant or his friends for a ride to the truck stop.
 {¶ 18} Appellant testified that Stephanie came to their home around 5 p.m. on November 24th to ask for a ride to meet her boyfriend at the truck stop; appellant told her that his truck had broken down and Stephanie left. Appellant testified that Stephanie came back around 10:30 p.m. and appellant borrowed a friend's vehicle and took Stephanie to the truck stop to meet her boyfriend and denied that he took her there to engage in prostitution. Appellant testified that he used the CB to locate Stephanie but that he used her real name; he testified that she was looking for her boyfriend and appellant was trying to find out if she was going with her boyfriend. Appellant denied ever taking Stephanie to any truck stops before that evening; denied taking Stephanie to any truck stops in order for her to engage in prostitution; and denied knowing that Stephanie engaged in prostitution. Appellant also testified that Stephanie first told him she was an underage runaway when they were pulled over by the police.
 {¶ 19} The court will address appellant's first and second assignments of error together as they are interrelated. In his first assignment of error, appellant argues that the trial court erred in denying his motions for acquittal. In his second assignment of error, appellant argues that the verdict was not supported by sufficient evidence. This court finds no merit in these assignments of error.
Crim.R. 29(A) states that the trial court shall enter a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." In State v. Pickett (1996), 108 Ohio App.3d 312,314, the court stated that a judgment for acquittal should be granted if the evidence presented is insufficient as a matter of law to sustain a conviction. "Therefore, the test an appellate court must apply when reviewing a challenge based on a denial of a motion for acquittal is the same as in reviewing a challenge based upon the sufficiency of the evidence to support a conviction." State v. Thompson (1998),127 Ohio App.3d 511, 525.
 {¶ 20} "* * * `[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. (Citations omitted.)" State v. Thompkins
(1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Id. "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." Id. at 390 (Cook, J., concurring).
 {¶ 21} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Lynch, 98 Ohio St.3d 514, 22842003 Ohio, at ¶ 89.
 {¶ 22} When an appellate court reviews a trial court's decision regarding a motion for acquittal, the appellate court must construe the evidence in a light most favorable to the state. State v. Wolfe (1988),51 Ohio App.3d 215, 216. "An appellate court undertakes a de novo review and will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt." State v. Miley (1996),114 Ohio App.3d 738, 742.
 {¶ 23} Appellant was charged with violation of R.C. 2907.22(A)(3). R.C. 2907.22(A)(3) provides:
 {¶ 24} "(A) No person shall knowingly:
 {¶ 25} "* * *
 {¶ 26} "(3) Transport another, * * * across the boundary of this state or of any county in this state, in order to facilitate the other person's engaging in sexual activity for hire[.]"
 {¶ 27} In regard to his first assignment of error, appellant argues that reasonable minds could not reach different conclusions as to whether appellant knowingly transported Stephanie to a truck stop in Lake Township, Ohio, in order to facilitate her engaging in sexual activity for hire. After reviewing the record of proceedings in the trial court, we find that the evidence was such that reasonable minds could reach different conclusions as to whether each element of the offense was proven beyond a reasonable doubt. Stephanie's testimony was that appellant drove her from Toledo to the truck stop so that she could engage in prostitution. Officer Hutton's testimony concerning the CB conversations he intercepted between "Blue Eyes" and "Big Ed" supported Stephanie's testimony that appellant had driven her to the truck stop to facilitate her prostitution activity. Both police officers testified that the truck stop was located in Lake Township, Wood County and that Toledo was located in Lucas County which was immediately adjacent to Wood County. Stephanie's testimony coupled with that of the police officers was sufficient to establish that reasonable minds could reach different conclusions about whether or not the state had proven beyond a reasonable doubt that appellant knowingly transported Stephanie from Toledo, in Lucas County to a truck stop in Lake Township, Wood County in order to facilitate her engaging in sexual activity for hire. Thus, the trial court did not err in denying appellant's motions for acquittal.
 {¶ 28} Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 29} In regard to his second assignment of error, appellant contends that the evidence did not establish that appellant knowingly transported Stephanie to the truck stop in order to facilitate her engaging in sexual activity for hire. "Knowingly" is defined in R.C.2901.22(B) as follows:
"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 30} To support a conviction under R.C. 2907.22(A)(3), the state had to prove beyond a reasonable doubt that appellant knowingly transported Stephanie or caused her to be transported across the boundary of Ohio or of any county in Ohio, in order to facilitate Stephanie's engaging in sexual activity for hire. To determine whether appellant acted knowingly, his state of mind may be inferred from the totality of circumstances surrounding the incident. State v. Booth (1999),133 Ohio App.3d 555, 562.
The evidence is undisputed that appellant transported Stephanie from Toledo, Lucas County, to the truck stop in Wood County. Although appellant testified that he took Stephanie to the truck stop so that she could meet her boyfriend, Stephanie testified that appellant took her to the truck stop on the evening of November 24th so that she could engage in sexual activity for hire. Stephanie also testified that appellant knew she was going to work at the truck stop on the evening of November 24th. In addition, Stephanie testified that she had sex with 2 people for money the evening of November 24th until she saw the police officer. Officer Hutton testified about his observations of appellant and his monitoring of the CB and hearing the exchange between Blue Eyes and Big Ed. Stephanie testified that she was Blue Eyes and appellant was Big Ed. While viewing the evidence in a light favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 {¶ 31} Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 32} In his third assignment of error, appellant argues that the verdict was against the manifest weight of the evidence. This court finds no merit in this assignment of error.
 {¶ 33} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Thompkins, supra, paragraph two of the syllabus. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence offered in a trial to support one side of the issue rather than the other.'" Id., 78 Ohio St.3d at 387. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of the conflicting testimony. Id. Whether a criminal conviction is against the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy (1998), 84 Ohio St.3d 180, 193, certiorari denied (1999),527 U.S. 1042.
 {¶ 34} An appellate court, "* * * reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Thompkins, 78 Ohio St.3d at 387. As stated by the Ohio Supreme Court in Thompkins:
 {¶ 35} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the fact finder's resolution of the conflicting testimony. (Citations omitted.)" Id.
 {¶ 36} Appellant argues that his conviction was against the manifest weight of the evidence because Stephanie's testimony was conflicting. Appellant also argues that his conviction was against the manifest weight of the evidence because one of the officers testified that there was insufficient evidence to charge Stephanie, the supposed prostitute, with prostitution and that this was inconsistent with charging him with knowingly promoting prostitution. However, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. Coley (2001), 93 Ohio St.3d 253, 263. As noted by the court in State v. Thompson (1998), 127 Ohio App.3d 511,529:
 {¶ 37} "* * * The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder."
 {¶ 38} Upon a review of the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we find no basis to believe that the jury clearly lost its way, that a manifest miscarriage of justice occurred, or that appellant's conviction was against the manifest weight of the evidence. See State v.Smith (1997), 80 Ohio St.3d 89, 114. The record supports the jury's determination that appellant committed the offense of promoting prostitution.
 {¶ 39} Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 40} In his fourth assignment of error, appellant argues that the state failed to establish venue. This court finds no merit in this assignment of error.
 {¶ 41} In regard to venue, Stephanie testified about discussions she and appellant had in regard to her prostituting herself "before we left the house in Toledo." She also testified that on November 24th, appellant transported her from his house to the truck stop. Both police officers testified that the truck stop was located in Lake Township, Wood County and that Toledo was located in Lucas County which was immediately adjacent to Wood County. Thus, there was sufficient testimony to establish that appellant transported Stephanie from Lucas County to Wood County.
Accordingly, appellant's fourth assignment of error is found not well-taken.
 {¶ 42} On consideration whereof, the court finds that the defendant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. It is ordered that appellant pay court costs for this appeal.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Mark L.Pietrykowski, J., CONCUR.