DECISION AND JOURNAL ENTRY.
{¶ 1} Defendant-Appellant Robert F. Widder has appealed from his conviction in the Summit County Court of Common Pleas for domestic violence. This Court affirms.
 I {¶ 2} On September 3, 2002, the Summit County Grand Jury indicted Appellant on one count of domestic violence, in violation of R.C.2919.25(A), a felony in the fifth degree. The indictment specifically alleged that Appellant had knowingly caused or attempted to cause physical harm to Sherry Stasko, a family or household member, and that Appellant had been previously convicted of domestic violence.
 {¶ 3} The matter proceeded to a jury trial and Appellant was subsequently found guilty of the crime as charged. The trial court sentenced Appellant to three years of community control. Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One
"Appellant's Conviction Was Based On Insufficient Evidence As A Matter Of Law, Where The Only Evidence To Support The Elements Of The Offense Were Prior Statements Of The Alleged Victim, Which As A Matter Of Law Do Not Constitute Substantive Evidence Of The Offense."
 {¶ 4} In Appellant's first assignment of error, he has argued that there was insufficient evidence to convict him of domestic violence. Specifically, Appellant has argued that the only evidence the state presented to the jury to prove that Appellant was guilty of domestic violence was Ms. Sherry Stasko's ("the victim") prior statements to the police; Appellant has contended that, as a matter of law, such evidence does not constitute substantive evidence of the offense.
 {¶ 5} This Court has previously held that a "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7, quoting State v. Miley
(1996), 114 Ohio App.3d 738, 742.
 {¶ 6} At the close of the state's evidence, Appellant made a Crim.R. 29 motion, stating: "Well, the only thing that I would do at this point in time, Your Honor, is make our motion to have the charges against [Appellant] dismissed because the State has failed to meet their burden." The trial court denied the motion, and Appellant rested his case without calling witnesses. Because Appellant did not put on a defense, and immediately rested his case after the state presented its case, there was no need for him to renew the motion at the close of all the evidence. As Appellant properly preserved the issue for appeal, this Court may address the merits of Appellant's assignment of error.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction[.]" Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support a conviction for the offense. See State v. Thompkins (1997),78 Ohio St.3d 380, 386. When analyzing the sufficiency of the evidence, a reviewing court must view the evidence "`in the light most favorable to the prosecution,' and ask whether `any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"State v. Carter (1995), 72 Ohio St.3d 545, 553, quoting Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 8} In the instant case, Appellant was convicted of domestic violence, in violation of R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Pursuant to R.C. 2901.01(A)(3), "physical harm" is "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Family or household member" includes:
"(a) Any of the following who is residing or has resided with the offender:
"(i) A spouse, a person living as a spouse, or a former spouse of the offender;
"(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
"(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender." R.C. 2919.25(E)(1).
 {¶ 9} A "`[p]erson living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(E)(2).
 {¶ 10} Appellant has argued that the state failed to prove all the essential elements of the crime of domestic violence. He has contended that "the only evidence going to establish any of the elements of the offense, i.e., knowingly causing or attempting to cause physical harm to a family or household member, was from the prior oral and written statements of the alleged victim[,]" and that such evidence does not constitute "competent, substantive evidence of any of the necessary elements of the offense for which Appellant was convicted."
 {¶ 11} Appellant's primary contention with regard to the victim's prior written statements is that the statements were used only to refresh the witness's memory, rather than as a means of impeaching the witness. Relying on Dayton v. Combs (1993), 94 Ohio App.3d 291, Appellant has contended that when prior oral or written statements are used solely to refresh the witness's recollection, the prior statement is of no substantive evidentiary value. The court in Combs explained that:
"Prior written statements may be utilized during trial testimony to either `refresh' a witness's recollection of events or information of which the witness has no present recollection at trial, or to impeach the testimony of a witness that is inconsistent with his prior statement. Use of such statements during trial testimony is permitted in the first instance to `jog' the memory of the witness, and in the second instance to indicate that the witness is untrustworthy. If used solely to refreshrecollection or to impeach, the prior statement is of no substantiveevidentiary value, and the hearsay rule and its exceptions are notimplicated. If the statement is used to establish the truth of the matter asserted, i.e., as substantive evidence, with or without an additional purpose to impeach, the hearsay rule and its exceptions are implicated." (Emphasis added.) Combs, 94 Ohio App.3d at 296.
 {¶ 12} Appellant is correct in his assertion that the state used the victim's prior written statements as a means of refreshing her recollection.[1] During direct examination of the victim, the state asked her whether she completed a victim statement form and to describe in detail what transpired between her and Appellant. The following colloquy took place:
"[The state] Did you fill [the victim statement form] out?
"[The victim] Yes.
"[The state] Did [Officer Hackathorn] tell you what to say in that statement?
"[The victim] No.
"[The state] Did somebody else tell you what to say in that statement?
"[The victim] No.
"[The state] And in that statement did you write down that [Appellant] had knocked you over in the chair, you bumped your head, you hurt your back?
"[The victim] I don't remember exactly what I said. I remember I did fall over in the chair, and in the process, yeah, my back and my head got hurt.
"[The state] If I showed you a copy of the form you filled out, would that refresh your memory as to what you wrote?
"[The victim] Well, I'm just saying that whatever I wrote, I wrote. I just don't remember exactly verbatim what I said.
"[The state] Okay. So if I show [the victim statement form] to you, that would help you, wouldn't it?
"[The victim] I guess."
 {¶ 13} It is apparent from the direct examination of the victim that the state used the victim statement form as a means of refreshing the victim's recollection because the victim stated that she "[didn't] remember exactly verbatim what [she] said [in the victim statement form]." It was not until after the state showed the victim her prior statement that she indicated that she did not agree with what she had previously written in the form. In contradiction to what she had previously written in the victim statement form, the victim testified that Appellant did not knock her out of a chair and drag her across the room by her arms; she stated that any bruises found under her arms were the result of Appellant attempting to help her off the ground.
 {¶ 14} Since the prior written statements were used to refresh the victim's recollection, we agree with Appellant's contention that such evidence cannot be used for substantive evidentiary significance. However, we reject Appellant's argument that the victim's prior written statements were the only evidence presented at trial that proved the necessary elements of the crime of domestic violence. After reviewing the record, we find that there was sufficient evidence for the jury to conclude that Appellant was guilty of the crime as charged.
 {¶ 15} At trial, Officer Matthew Hackathorn testified to the events that took place on August 7, 2002. He stated that he was dispatched to Appellant's home on a domestic violence call after the victim telephoned the police from her neighbor's apartment. Officer Hackathorn testified that when he arrived at the victim's neighbor's apartment, he found the victim "shaking. She was trembling. She was crying. Very distraught, disoriented, very emotionally upset." Officer Hackathorn further stated, without objection from defense counsel, that the victim told him:
"That her boyfriend had thrown her around, that she'd been knocked on the floor * * *. She stated that she was sitting at the table in her chair, that her boyfriend had — they were arguing over money and some things and he wanted her to do something, that he had knocked her off the back of the chair down on the floor and she hit her head and back on the kitchen floor. * * * She told me that the boyfriend, once she was on the ground, told her to get up, get up. She refused to get up, that he had grabbed her and was trying to forcibly pull her up off the ground and that when he couldn't get her up, he was like dragging her across the floor."
 {¶ 16} Officer Hackathorn further testified that when he went inside the apartment shared by the victim and Appellant, he noticed that "[t]here was a chair laying in the floor tipped over with its back upon the ground." He also testified that the victim was not intoxicated when he arrived at the scene. The victim, Officer Hackathorn stated, was able to fill out a victim statement form at the scene and she later drove to the police station to file a formal complaint.
 {¶ 17} In addition, the state played a recording of the 911 phone call that the victim made after Appellant threw her to the floor and left the apartment.[2] On the tape, the victim clearly tells the 911 operator: "Ah my boyfriend is throwing me all over the apartment. I'm down at a neighbor's now calling. I want him out." Photographs of visible bruises on the victim's arm were also presented to the jury.
 {¶ 18} Appellant stipulated to a prior conviction for domestic violence. Further, the victim stated that she was in a relationship with Appellant for approximately two years. She testified that she and Appellant lived together as boyfriend and girlfriend. And when asked if "it [was] fair to characterize [her relationship with [Appellant] as the same as husband and wife[,]" the victim responded: "Yes."
 {¶ 19} As the jury was presented with sufficient evidence to find beyond a reasonable doubt that the victim was a "household member" and that Appellant knowingly caused or attempted to cause physical harm to the victim, we find that Appellant's assignment of error is not well taken.
 Assignment of Error Number Two
"Appellant Was Denied The Effective Assistance Of Trial Counsel."
 {¶ 20} In Appellant's second assignment of error, he has argued that he was denied the effective assistance of counsel. We disagree.
 {¶ 21} Appellant bears the burden of proof in a claim of ineffective assistance of counsel. State v. Colon, 9th Dist. No. 20949,2002-Ohio-3985, at ¶ 49. In order to establish the existence of such a claim, Appellant must satisfy a two-pronged test. First, Appellant must demonstrate that trial counsel's performance was deficient by showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed Appellant by the Sixth Amendment. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. When analyzing the reasonableness of trial counsel's challenged conduct, this Court must consider the facts of the particular case as they existed at the time of trial counsel's conduct. State v. Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, at ¶ 31. Appellant must identify the acts or omissions of his attorney that he claims were not the result of reasonable professional judgment. Id. This Court must then decide whether counsel's conduct fell outside the range of that which is considered professionally competent. Id.
 {¶ 22} Second, Appellant must also demonstrate that he was prejudiced by his trial counsel's deficient performance. Palmison,2002-Ohio-2900, at ¶ 30. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. This requires a showing that counsel's errors were so serious as to deprive Appellant of a fair trial, a trial whose result is reliable. Strickland, 466 U.S. at 687. Additionally, "[a]n appellate court may analyze the second prong of the Strickland test alone if such analysis will dispose of a claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." State v. Lansberry, 9th Dist. No. 21006, 2002-Ohio-4401, at ¶ 16, citing State v. Loza (1994), 71 Ohio St.3d 61, 83. Accordingly, we will begin our analysis with a discussion of the prejudice prong ofStrickland.
 {¶ 23} Assuming, arguendo, that the victim statement form should not have been admitted into evidence and Officer Hackathorn's testimony regarding what the victim told him was inadmissible hearsay, Appellant has failed to show that he was prejudiced by trial counsel's alleged errors. Specifically, Appellant has failed to show that the jury would have reached a different verdict if it did not have the benefit of the victim statement form or the officer's testimony regarding what the victim told him.
 {¶ 24} Aside from the officer's testimony regarding what the victim stated and the victim statement form, the jury was presented with sufficient evidence to conclude that Appellant was guilty of domestic violence. The jury heard the 911 tape, in which the victim clearly stated that Appellant was throwing her around the apartment and that she wanted him out of her apartment. Officer Hackathorn also testified that when he arrived at the scene of the incident he found the victim trembling, shaking, and distraught. He further testified that after the incident, the victim filled out a victim statement form and drove her own car to the police station to file a charge of domestic violence against Appellant. Additionally, the jury was also able to view pictures of the bruises the victim sustained as a result of her encounter with Appellant. Such evidence, we find, was sufficient to lead a jury to conclude that Appellant did, in fact, attack the victim and drag her across their living room floor. Thus, we cannot say that "but-for" trial counsel's alleged errors the result of the trial would have been different.
 {¶ 25} Because Appellant has failed to prove the second prong of a claim of ineffective assistance of counsel, we find that Appellant's assignment of error lacks merit.
 III {¶ 26} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
CARR, P.J. and REECE, J. concur.
(REECE, J., retired judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Article IV,§ 6(C), Constitution.)
[1] The state was able to allow the victim to read the victim statement form pursuant to Evid.R. 803, which provides:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
"* * *
"(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."
[2] The parties stipulated to the 911 tape, which was marked as state's exhibit "Number 1."