DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Gene L. Griggy has appealed from a decision of the Cuyahoga Falls Municipal Court that convicted him of violating Cuyahoga Falls City Code § 1323.99. This Court reverses and remands.
 I {¶ 2} On April 19, 2001, Charles Nettle, the City of Cuyahoga Falls Housing Inspector, sent Appellant a letter informing him that a recent inspection of Appellant's property located at 1197 and 1199 West Bath Road, in Cuyahoga Falls, Ohio, revealed several conditions that required correction in order to comply with the Housing/Property Maintenance Code of the City of Cuyahoga Falls. Appellant challenged the housing order sent by Mr. Nettle by appealing to the City of Cuyahoga Falls Board of Housing Appeals in May 2001. The Board of Housing Appeals denied Appellant's appeal and concluded that: 1) the house located at 1199 West Bath Road should be condemned[1]; and 2) Appellant must comply with the housing order with respect to the property located at 1197 West Bath Road.
 {¶ 3} After almost a year had passed since the Board of Housing Appeals ordered Appellant to comply with the housing order, Appellant had still failed to make the required repairs to his property. As a result, the housing inspector filed a complaint against Appellant in the Cuyahoga Falls Municipal Court for one count of failure to comply with the order of the housing inspector, in violation of Cuyahoga Falls City Code § 1323.99. The matter proceeded to a bench trial, where Appellant represented himself. The state called one witness: Ted Williams, the Chief Code Enforcement Officer of the City of Cuyahoga Falls Housing Department. Mr. Williams testified that he personally inspected the properties located at 1197 and 1199 West Bath Road. He also stated that he was present when Appellant appealed the housing order to the Board of Housing Appeals. While at that meeting, Mr. Williams stated that the Board decided to condemn the property located at 1199 West Bath Road.
 {¶ 4} As to the property located at 1197 West Bath, Mr. Williams explained that on December 3, 2001, Appellant was given an extension of time to perform the repairs because of the ensuing winter weather. A reinspection was done on May 2, 2002, and Mr. Williams testified that no repairs had been made to the subject property. Mr. Williams did admit, however, that "[t]here has been some exterior cleanup done of some materials on the premises." Mr. Williams also testified that on the day of trial, he visited Appellant's property and observed that:
"There are several areas of missing exterior shingles. That dwelling needs to be protected from the elements by painting or by siding, some type of approved covering. There's spouting down. To me, in my own personal opinion, it looks basically the same as what I saw approximately a year and a half ago when I initially visited the premises."
 {¶ 5} After Mr. Williams testified, the city rested its case and Appellant took the stand on his own behalf. Appellant testified that when he asked the Board of Housing Appeals to name those persons who had complained about his property "[t]hey [couldn't] come up with one name on a complaint on that property, and neither could [the city councilman] when we were in the [Board of Housing Appeals] meeting." He also stated that he believed that because his property was originally located in Northampton Township, which later merged with the City of Cuyahoga Falls, the city building codes for the City of Cuyahoga Falls did not apply to his property.
 {¶ 6} During his testimony, Appellant admitted that the house needed work, but that he was "trying to sell this property. *** I had a lot of stuff I wanted to move yet because I moved 62 miles away and I moved everything by myself and still got stuff to move. So I'm trying to sell the property." Appellant initially tried to sell the property to his son, but his son purchased another piece of property. Another barrier that Appellant contended prevented him from selling or repairing his property in a timely fashion was his and his wife's health. Appellant stated that "[b]oth of us are on medicine — medication. Hers is about 400 a month, and I'm on medication for hypertension."
 {¶ 7} At the close of all the evidence, the trial court found Appellant guilty. The court stated: "[I]t appears clear to me that while you have some — some legitimate reasons, perhaps, for not being able to get the repairs done yet, you are in violation of the orders that were issued to you by the Housing Department." Before passing sentence, however, the trial court gave Appellant forty-five days to either complete some of the repairs or have the house demolished. The court further stated: "I suggest you make all deliberate speed to try to get this thing taken care of within the next 45 days so that we at least have [s]ome progress when you come back for sentencing. * * * You're either going to get the repairs done or you have to get the property sold, one or the other."
 {¶ 8} A sentencing hearing was held on December 9, 2002. Present at the hearing was Mr. Nettle, who informed the court that Appellant had not sold the house or made the necessary repairs. Appellant maintained that he could not make the needed repairs, stating: "I cannot[.] I don't have the money to bring this house up to code. I — I just plain ordinary can't afford it. If I could, it would be nice, the house would be worth a whole lot more. I don't have the money." Because Appellant failed to either sell the house or make the required repairs, the trial court sentenced Appellant to one hundred and eighty days imprisonment and imposed a $1,000 fine plus court costs. After sentencing Appellant, the trial court stated: "I'm going to hold the sentence in abeyance at this time, until — until the 31st of January to give you an opportunity to sell the house."
 {¶ 9} Appellant has timely appealed, asserting one assignment of error.[2]
 II Assignment of Error
"Appellant's Conviction Was Based Upon Insufficient Evidence As A Matter Of Law, And Was Against The Manifest Weight Of The Evidence."
 {¶ 10} In Appellant's sole assignment of error, he has argued that there was insufficient evidence presented at trial from which the jury could find him guilty of the crime as charged. He has further contended that his conviction was against the manifest weight of the evidence. We agree.
 {¶ 11} As an initial matter, this Court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. Statev. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at ¶ 23, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, supra at ¶ 25. In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 12} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant.Otten, 33 Ohio App.3d at 340.
 {¶ 13} In the instant matter, Appellant was charged with violating Cuyahoga Falls City Code ("CFCC") § 1323.99 because he failed to comply with an order of the housing inspector of the City of Cuyahoga Falls. CFCC § 1323.99 provides:
"Whoever violates any provision of this chapter or any Code adopted herein or fails to comply with any lawful order issued pursuant thereto is guilty of a misdemeanor of the first degree and shall be fined not more than one thousand dollars ($1,000) or imprisoned not more than six months or both."
 {¶ 14} The housing order, which was issued on April 19, 2001, required Appellant to:
"1. Have the deteriorating, damaged and/or dilapidated dwellings' roofs, chimneys, gutters, spouting, walls, foundations, doors and windows, put in a structurally sound, safe and weather tight state of repair. Protect the dwellings' exterior surfaces from the elements and decay with paint or other approved coverings or treatment.
"2. Or, demolish said structures (dwellings).
"3. Have the deteriorating, damaged and/or dilapidated garages and/or outbuildings roofs, walls, foundations, doors and windows put in a structurally sound, safe weather tight state of repair. Protect the garages and/or outbuildings exterior surfaces from the elements and decay with paint or other approved coverings or treatment.
"4. Or, demolish said structures (garages and outbuildings).
"5. Remove stored materials from the yard, such as wood, pallets, and metal.
"6. Remove debris from the yard such as tires, law mowers, car and truck parts, appliances and miscellaneous debris."
 {¶ 15} Appellant has essentially argued that assuming he failed to comply with all of the requirements set forth in the housing order, he could not be guilty of violating CFCC § 1323.99 because Chapter 1323 of the CFCC does not apply to him. Relying on CFCC § 1323.02, Appellant has argued that Chapter 1323 only applies to persons who have built structures within the City of Cuyahoga Falls. CFCC § 1323.02 states, in pertinent part:
"No owner or other person shall construct, erect, build or equip any building or structure to which the Ohio Basic Building Code is applicable, or make any addition thereto or alteration thereof, except in case of repairs for maintenance without affecting the construction, sanitation, safety or other vital feature of such building or structure, without complying with this chapter[,] Ohio Revised Code Chapters 3781 and 3791 or the Ohio [Basic] Building Code[,] or fail to comply with any lawful order issued pursuant thereto"
 {¶ 16} The unambiguous language of CFCC § 1323.02 essentially provides that 1) any person constructing or erecting a building or 2) making additions or alterations to a building, must comply with Chapter 1323, specific chapters of the Ohio Revised Code, the Ohio Basic Building Code or any lawful order. Thus, the evidence presented at trial must show that Appellant either constructed a house that does not comply with the building laws of Cuyahoga Falls or Ohio, or that Appellant made "additions" or "alterations" which do not comply with the building codes of Cuyahoga Falls or Ohio.
 {¶ 17} At trial, Ted Williams, the Chief Code Enforcement Officer of Cuyahoga Falls Housing Department, stated that he determined Appellant was the owner of the property located at 1197 West Bath after conducting a computer search. He further testified that he visited Appellant's property located at 1197 West Bath Road on the day the trial commenced. Upon his visit, Mr. Williams discovered that Appellant had failed to comply with the housing order; that is, Appellant had failed to either demolish or repair the property. He stated that, in his opinion, the property looked the same as it did when the housing order was initially issued in April 2001.
 {¶ 18} When Appellant took the stand, he testified that he purchased the property at 1197 West Bath in the 1960s. He did not deny that his property failed to comply with the housing order. Appellant admitted that the house required repairs when he stated: "I'm not saying [the property] doesn't need work." However, Appellant's only defense to the crime as charged was that he did not have the money to make the required repairs and that he was making efforts to sell the property.
 {¶ 19} Based on the evidence presented at trial, we believe that the trier of fact clearly lost its way when it found Appellant guilty of failing to comply with a housing order, in violation of CFCC § 1323.99. Appellant's testimony, along with Mr. Williams' testimony, only demonstrates that Appellant allowed his property to fall into disrepair. The evidence does not show that Appellant built the house or that he made "alterations" or "additions" to the property in violation of applicable building codes. The accumulation of debris on property, which a homeowner allows to become dilapidated, does not constitute "additions" or "alterations" to a structure or building. Therefore, we find that the evidence weighs heavily against the judgment, and the trial court "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Otten, 33 Ohio App.3d at 340.
 {¶ 20} Additionally, after reviewing the letter the housing inspector initially sent to Appellant on Aril 19, 2001, we believe that the housing inspector may have erred when it charged Appellant with violating Chapter 1323. Chapter 1323 incorporates the City of Cuyahoga Falls Ohio Building Code, the Ohio Mechanical Code, and the Ohio Plumbing Code. However, the April 19, 2001, letter does not indicate that Appellant was in violation of the Ohio Building Code, the Ohio Mechanical Code or the Ohio Plumbing Code. The letter specifically refers to the City of Cuyahoga Falls Housing Code. The relevant portion of the letter states: "A recent inspection conducted at the above premises revealed several conditions, which we suggest be corrected to comply with theHousing/Property Maintenance Code." (Emphasis added.) Furthermore, an attachment included with the letter refers to CFCC § 1355.05, which provides that a party has a right to appeal a decision of the housing inspector to the Board of Housing Appeals.
 {¶ 21} Chapter 1355 governs City of Cuyahoga Falls' right to enforce the Cuyahoga Housing Code, and provides methods of enforcement and penalties for failing to comply with provisions contained therein. The penalty for violating any part of the Housing Code is contained in CFCC § 1355.99, which provides:
"Any person who violates any provision of this Housing Code, or any provision or any rule or regulations adopted by the Housing Enforcement Officer pursuant to authority granted by this Housing Code shall be guilty of a misdemeanor of the first degree and shall be fined not more than one thousand dollars ($1,000), or imprisoned not more than six months, or both. Each day's failure to comply with any such provision shall constitute a separate violation."
 {¶ 22} Based upon the contents of the letter sent to Appellant, we believe, without deciding whether Appellant was in violation of any lawful ordinance of the City of Cuyahoga Falls, that Appellant's failure to comply with the housing order would be in violation of Chapter 1355, rather than Chapter 1323.
 {¶ 23} As to Appellant's claim that there was insufficient evidence for a jury to find him guilty, we note that this Court has previously held that a "defendant who is tried before a jury and brings a Crim.R. 29(A) motion for acquittal at the close of the state's case waives any error in the denial of the motion if the defendant puts on a defense and fails to renew the motion for acquittal at the close of all the evidence." State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7, quoting State v. Miley (1996), 114 Ohio App.3d 738, 742. Here, Appellant failed to bring a Crim.R. 29 motion at the close of the state's case nor did he make such a motion when he rested his case. Consequently, we conclude that Appellant waived any objection under Crim.R. 29 to the sufficiency of the evidence and we need not consider Appellant's sufficiency argument.
 {¶ 24} Accordingly, Appellant's assignment of error is well taken.
 III {¶ 25} Appellant's assignment of error is sustained. The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this decision.
Judgment reversed, and cause remended.
SLABY, P.J.
BATCHELDER, J. CONCUR
[1] The City Engineer condemned the house located at 1199 West Bath Road on June 6, 2001. On November 15, 2001, the house was demolished and the demolition cost was assessed to the property owner.
[2] Upon the institution of the instant appeal, the trial court stayed the execution of sentence pending the disposition of this appeal.