DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Shane M. Lambert, has appealed from his convictions of burglary and breaking and entering. We affirm.
 I {¶ 2} On January 9, 2003, Appellant was indicted by the Medina County Grand Jury on two counts of burglary, in violation of R.C. 2911.12(A)(1), and one count of breaking and entering, in violation of R.C. 2911.13(B). A supplemental indictment was returned against Appellant on June 16, 2003, which charged him with one additional count of burglary, in violation of R.C.2911.12(A)(2). The indictments stemmed from a series of break-ins that occurred in southwest Medina County on December 6, 2002. A three day jury trial began on August 19, 2003.[1] Appellant was found guilty of all three remaining charges and, on September 19, 2003, was sentenced to five years incarceration for each burglary charge and six months incarceration for the charge of breaking and entering. All terms were to be served consecutively.
 {¶ 3} Appellant has timely appealed his convictions, asserting one assignment of error.
 I
"The evidence at trial was insufficient to support appellant's burglary and breaking and entering convctions, and those convictions were against the manifest weight of the evidence."
 {¶ 4} In his first assignment of error, Appellant has argued that his convictions were based on insufficient evidence and against the manifest weight of the evidence. Specifically, Appellant has argued that the State failed to prove each element of the burglary charges and the breaking and entering charge beyond a reasonable doubt. We disagree.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence and manifest weight of the evidence are distinct legal concepts. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight challenge requires the court to examine whether the prosecution has met its burden of persuasion. Id. at 390 (Cook, J., concurring).
 {¶ 6} As to Appellant's claim that his conviction was based upon insufficient evidence, we note that Appellant brought a Crim.R. 29(A) motion for acquittal at the close of the State's case then renewed his motion at the close of all the evidence. Therefore, Appellant has preserved this issue for appeal. See,State v. Jaynes, 9th Dist. No. 20937, 2002-Ohio-4527, at ¶ 7, quoting State v. Miley (1996), 114 Ohio App.3d 738, 742.
 {¶ 7} On review of the sufficiency of the evidence, "`the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Williams, 99 Ohio St.3d 493,2003-Ohio-4396, at ¶ 50, quoting Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ec.2d 560. .
 {¶ 8} When a defendant asserts that the conviction is against the manifest weight of the evidence, an appellate court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Alterations sic.) State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 9} Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted; alterations sic.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4.
 {¶ 10} Appellant was convicted of one count of burglary, a violation of R.C. 2911.12(A)(1), and one count of burglary, a violation of R.C. 2911.12(A)(2), which state in pertinent part:
"(A) No person, by force, stealth, or deception, shall do any of the following:
"(1) Trespass in an occupied structure * * * when a person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense;
"(2) Trespass in * * * a separately secured * * * portion of an occupied structure that is a permanent * * * habitation of any person when any person other than an accomplice of the offender is * * * likely to be present, with purpose to commit in the habitation any criminal offense[.]"
 {¶ 11} Appellant was also convicted of breaking and entering, a violation of R.C. 2911.13(B), which states in pertinent part:
"(B) No person shall trespass on the land or premises of another, with purpose to commit a felony."
 {¶ 12} Appellant's convictions stem from crimes committed within thirty minutes of each other at three different homes in Medina County. Our review of the evidence reveals that the State called seven witnesses during trial, including the resident of each home where the crimes were committed as well as three law enforcement officers involved in the investigation of each crime. Appellant's accomplice was also called as a State's witness. In addition to witness testimony, the State admitted thirty-three exhibits into evidence which included photographs from the crime scenes and two photo line-ups that resulted in an eye witness identifying Appellant as the perpetrator of the breaking and entering crime. Appellant did not put on any witnesses or admit any exhibits into evidence.
 {¶ 13} Appellant's burglary conviction pursuant to R.C.2911.12(A)(1) stems from events that occurred at the home of Diana Sibberson ("Sibberson") on December 6, 2002. Sibberson testified to the following events. She was home alone when her driveway alarm started to ring, indicating that a car was approaching her house. She went to the window to see who had arrived, and saw two men in a dark blue car pull in front of her home and park. One of the men approached the front door to her home and "beat on the door." She became frightened and did not answer the door. As she began to move into a room adjacent to the front door, the unidentified man kicked in the front door. As a result, she found herself face-to-face with the intruder. She "started screaming and waving [her] arms" and ordered the man out of her house. The man quickly left her house, got in the passenger side of the blue car and the driver of the car drove out the driveway. Sibberson immediately called the police. She was unable to identify the man who kicked in her front door because she was "terrified" and "hysterical."
 {¶ 14} Appellant's burglary conviction pursuant to R.C.2911.12(A)(2) stems from events that occurred at the home of Antoinette Savick ("Savick") on December 6, 2002. Savick testified to the following events. She left her home in the morning and passed two men in a dark colored car. She was unable to provide a description of either of the men in the car. She returned to her home about thirty minutes later and found the back door to her home standing open. Upon entering her home she found that her house had been ransacked. However, she found nothing missing from her home.
 {¶ 15} Appellant's breaking and entering conviction pursuant to R.C. 2911.13(B) stems from events that occurred at the home of Paul Matye ("Matye") on December 6, 2002. Matye testified to the following events. He was home alone when his dog started to bark. He looked out the window and noticed a man standing at his front door and a second man sitting in the driver's seat of a blue car parked in his driveway. He opened his garage door and approached the man in the parked car. At the same time, the man at his front door started walking towards the blue car. Matye offered his assistance to the driver of the car, at which time the driver told him that he and his companion were trying to purchase a pony from someone named "Miller" who lived on Moss Road. Matye became suspicious of the two men, wrote down their license plate number, and called the county sheriff once the men left his residence. Detectives Kevin Ross ("Ross") and J. Tadd Davis ("Davis") of the Medina County Sheriff's Department responded to the scene and took Matye's statement of events. Matye also directed the officers to footprints left in the snow in his driveway by the man who had been at his door. Ross took photographs of the footprints left in Matye's driveway.
 {¶ 16} Matye further testified that several days after the December 6, 2002 incident, he was given two photo line-ups by the Medina County Sheriff's Department. In the first photo line-up, Matye identified a man whom police determined was David Steward ("Steward") as the driver of the blue car that parked in his driveway on December 6, 2002. In the second photo line-up, Matye identified Appellant as the man who was with Steward and left the footprints in his driveway that were photographed by police on December 6, 2002. Matye also identified Appellant in open court as the man who was with Steward and left the footprints in the snow in his driveway on December 6, 2002.
 {¶ 17} Ross and Davis testified for the State along with Sergeant Detective Warren Walter ("Walter") of the Medina County Sheriff's Department. Davis testified that the license plate number given to the sheriff's department by Matye was registered to Steward, which prompted Davis to put Steward's photo in the first photo line-up shown to Matye. Davis further testified that once Matye identified Steward as the driver of the car parked in his driveway on December 6, 2002, Appellant's photo was placed in the second photo line-up shown to Matye because Appellant was a known accomplice of Steward.
 {¶ 18} Walter testified that he administered the two photo line-ups to Matye, and that Matye identified Steward as the driver of the blue car that was in his driveway, and Appellant as the man who was at his front door and left footprints in his driveway on December 6, 2002.
 {¶ 19} Ross and Walter both testified that they responded to the scene of all three crimes, and that footprints were left in snow at all three crime scenes. Ross, Walter and Davis all testified that they compared the footprints left by Appellant in Matye's driveway with footprints left in the snow at the Savick and Sibberson residences, and that based on their observations, all three sets of footprints shared unique characteristics: the heel portion of each footprint exhibited a unique triangle shaped design, and the ball portion of each footprint exhibited a unique "wavy line" design. As a result, all three officers concluded that the footprints from the three crime scenes matched.
 {¶ 20} Pursuant to a plea agreement, Steward testified for the State. He testified to the following events. He and Appellant first went to the Savick home where Steward kicked in the back door of the home and both men entered the home in search of money. Finding none, they moved on to Matye's home. When Matye approached the men through his garage, Steward made up the story about searching for a pony that was for sale. Steward and Appellant left Matye's home and soon saw a car leaving the Sibberson home. Assuming the people in the car were the residents of the home, Steward and Appellant drove down the driveway of the home. Appellant knocked on the front door then kicked the door open. Steward heard a woman screaming in the home, at which point Appellant got back in the car and Steward made a quick exit from the driveway back to the main road. After he was arrested, Steward contacted his girlfriend and asked her to lie to the police and provide him with an alibi for the time period in which the three crimes occurred.
 {¶ 21} In support of Appellant's argument that his convictions were based on insufficient evidence and against the manifest weight of the evidence, Appellant has argued that the State failed to establish the identity of the perpetrator of each crime beyond a reasonable doubt. He has based this argument on the fact that Savick and Sibberson were unable to provide a description of the person who burglarized their homes. The State, however, has argued that the jury had ample evidence in which to conclude that Appellant was the perpetrator of each crime.
 {¶ 22} It is well settled that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. As such, "[t]his Court gives deference to the findings of the jury as they are in the best position to determine the credibility of witnesses during trial."State v. Aaron, 9th Dist. No. 21434, 2003-Ohio-5159, at ¶ 17.
 {¶ 23} Our careful review of the record reveals that the State presented a substantial amount of evidence that Appellant was the perpetrator of the three charged offenses. The jury could reasonably believe Matye and find that Appellant was the man who left footprints in his driveway. The jury could also reasonably believe the testimony of the three investigating law enforcement officers that the footprints at all three crime scenes shared unique characteristics, and that the footprints left by Appellant at the Matye residence matched footprints left at both the Savick and Sibberson residences. The jury could further believe the testimony of Steward that he and Appellant committed all three crimes together. Based on the foregoing, this Court finds that the State presented more than enough evidence for the jury to conclude that Appellant was the perpetrator of the three charged offenses.
 {¶ 24} In further support of his argument that his convictions were based on insufficient evidence and against the manifest weight of the evidence, Appellant has argued that the State failed to prove that Appellant committed the offense of breaking and entering because it failed to prove that Appellant trespassed on Matye's property with purpose to commit a felony, an enumerated element of the breaking and entering offense. The State has argued that based on the testimony presented, the jury could reasonably conclude that Appellant trespassed on Matye's property with purpose to commit a felony.
 {¶ 25} Our careful review of the record reveals that the State presented ample evidence that Appellant trespassed on Matye's property, and that he did so with purpose to commit a felony. The jury could reasonably believe Matye's testimony that Appellant was the man who was at his front door and left footprints in the snow in his driveway on December 6, 2002. The jury could also reasonably believe Steward's testimony that he and Appellant entered Matye's property in order to break into Matye's home and steal money, and therefore committed the offense of breaking and entering. Based on the foregoing, this Court concludes that the State presented more than enough evidence for a jury to conclude that Appellant trespassed on the property of Matye with purpose to commit a felony and, as a result, committed the crime of breaking and entering.
 {¶ 26} In sum, this Court is convinced that the State presented ample evidence and proved all of the statutory elements of burglary as well as breaking and entering beyond a reasonable doubt. Furthermore, there is no evidence in the record that the jury clearly lost its way or created a manifest miscarriage of justice. As a result, Appellant's convictions are based on sufficient evidence and not against the manifest weight of the evidence. This is not an exceptional case in which the weight of the evidence warrants a reversal. See Roberts, supra, at 4. Appellant's sole assignment of error is not well taken.
 III {¶ 27} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Slaby, J., concur.
[1] On the first day of trial, the State moved to dismiss count 1 of the indictment, a charge of burglary pursuant to R.C.2911.12(A)(1), stating that it was duplicative of count 4 of the indictment.